THE GREEN MOUNTAIN FALLS TOWN AND IMPROVEMENT
COMPANY v. BOYES ET AL.

RESCISSION—CONSTRUCTION OF CONTRACT.
B. conveyed to the defendant 160 acres of land adjacent to its town
site in consideration· of $100 and of the agreements set forth in
defendant's bond of even date with the conveyance. The condi-
tion of this bond was that the defendant survey, grade and improve
the streets on .the land and make other valuable improvements
thereon, and commence within thirty days to survey into lots
and plat the land, or so much thereof as defendant might deem
practicable, and to deed to B. one tenth of the lots, to be selected
by chance.  A portion of the land was surveyed and platted by the
defendant, but, with B.'s consent, in such a manner that a fraction
of some of the lots lapped over upon other lands of the defendant.
B. refused to divide the lots, for the reason that the streets had
not been graded or other improvements made, and thereupon the
$100 was tendered back, and this action brought for a rescission
and cancellation of the conveyance.  The defendant showed its
readiness and willingness to grade the streets and make other im-
provements whenever needed, that it had expended approximately
$1,000 in platting the lots, and that, at the time of the trial, the
value of the premises had been greatly enhanced by expensive im-
provements placed thereon by it.  *Held: First*, that the fact that
the streets had not been graded or other improvements made did
not justify B. in refusing to divide the lots; *second*, that he was
not justified in refusing to divide the lots by reason of the manner
in which they were platted; and, *third*, that the complaint was
properly dismissed for want of equity.

*Appeal from the Court of Appeals.*

ON AUGUST 19, 1889, the appellees filed their complaint in
the district court of El·Paso county, wherein it is alleged,
in substance, that on December 26, 1888, Boyes was induced,
by false and fraudulent representations, to convey by war-
ranty deed to The Green Mountain Falls Town and Im-
provement ·Company 160 acres of land situate in El Paso
county, Colorado.  That said land was of the value of
$7,000.  That the company owned land south and west of
this quarter section, which constituted the town site known
as " Green Mountain Falls."  That in consideration of such
VOL. XXII—15

conveyance the company agreed to pay $100 in cash and build a $75,000 hotel on the property west of and adjoining said land during the summer of 1889. That they would grade the streets and make other valuable improvements, which would make the property very valuable, and that they would reconvey to him every tenth lot. That, relying upon the truth of these representations, he made the conveyance to the company. That the company had done nothing towards performing its contract except to pay the $100 and survey the land into lots in such a way as to make a division thereof intricate, if not impracticable, since a number of the lots as platted lie partly on lands of the company other than that conveyed. That the company had made a written demand for a division, and threatened to sell the property. Thereupon Boyes tendered the $100 and demanded a rescission of the contract. Prays for a cancellation of the deed, etc.

The defendant company answers, denying all allegations of fraud; denies that it agreed to build a hotel which would cost $75,000, or of any description whatever, and avers that the only considerations for said deed, except the payment of the $100 in cash, which had been paid, were expressed in the written contract executed at the time the deed was delivered, which was as follows:

"Know all men by these presents: That The Green Mountain Falls Town and Improvement Company, a corporation with its principal office in the city of Colorado Springs, County of El Paso, and State of Colorado, is held and firmly bound unto James Boyes, of the county and state aforesaid, in the penal sum of Five Hundred dollars ($500) lawful money of the United States, for the payment of which sum, well and truly to be made to the said James Boyes, the said company binds itself and its successors.

"Sealed with its corporate seal, and dated this 26th day of December, A. D., 1888.

"THE GREEN MOUNTAIN FALLS TOWN
AND IMPROVEMENT CO.
"F. E. DOW, President,
"I. J. WOODWORTH, as Secretary.

" The condition of the above obligation is such that,

" Whereas, The said James Boyes has executed a warranty deed, running to the said Green Mountain Falls Town and Improvement Company, of the following property, to wit:

" The southwest quarter (1/4) of the southwest quarter (1/4) of section five (5), and the north one-half (1/2), and the southwest quarter (1/4) of the northwest quarter (1/4) of section eight (8) all in township No. thirteen (13), range No. sixty-eight (68) west, situate in the county of El Paso, and state of Colorado.

" Now, Therefore, If said company shall survey, grade and improve the streets on said lands, make other valuable improvements thereon, and commence within thirty days of the date hereof, to survey into lots and plat said lands, or so much thereof as said company may deem practicable, and deed to said Boyes one-tenth of said lots so platted, to be divided as follows, to wit:

" Said Boyes to draw one of said lots, and said company to draw nine of said lots, said drawing to be continued until all of said lots platted are drawn, also to pay said Boyes one-tenth of the net proceeds from the sale of said lands not surveyed and platted by said company, and to allow him, the said Boyes, to retain the house now occupied by him, then this obligation to be null and void, otherwise of full force and effect.

" It is distinctly understood and agreed by said Boyes that the penalty and conditions of the above obligations are subject to the validity and sufficiency of the above warranty deed above referred to."

Averred that it did, within thirty days of the execution of said contract, commence surveying and platting said land into lots, and so much of said land as was deemed practicable was platted into town lots, to the number of about one hundred and fifty, and such plat was duly recorded on July 2, 1889. Averred its willingness, and offer, to make conveyance of the lots, and the refusal of Boyes to accept the same. That no time was specified as to when the grading and other im-

provements should be made, but it was the understanding between the parties that this part of the contract should be performed when needed; and that the other improvements contemplated was the bringing of water upon the land for the use of the inhabitants, when.the same should be needed. That it had entered into contract with parties for water pipes through the streets, to be completed June 1, 1890, and was then negotiating with parties to grade the streets. To this answer a replication was filed, which pleaded the statute of frauds to the written contract set forth in the answer. The cause was tried to the court, which found the issues joined in favor of the defendant, and rendered a decree dismissing the plaintiff's complaint for want of equity, and decreed performance on the part of Boyes in accordance with the prayer of defendant's cross complaint. On appeal to the court of appeals, the judgment of the court below was reversed. From that judgment the defendant company prosecutes this appeal.

Mr. T. A. McMORRIS, for appellant.

Mr. WM. HARRISON and Mr. T. O. TOWNSEND, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

This action was brought to cancel a conveyance of a quarter section of land alleged to have been procured by fraud. The averments of the complaint relied on as constituting the ground for relief are to the effect that the officers of the company made false representations as to certain improvements that the company proposed to make; that, relying on the truth of these statements, and believing that by reason of such improvements the land would become greatly enhanced in value, Boyes was induced to convey the entire tract to the company in consideration that it would plat so much thereof into town lots as was practicable, and deed to him one tenth of the lots so platted, and pay him one tenth of the net proceeds derived from the sale of the land not surveyed and platted.

It appears from the evidence that appellant owned land which constituted the town site known as " Green Mountain Falls," adjacent to the land conveyed, and desiring to obtain the latter as an addition to the town site, opened negotiations to that end with the appellee Boyes, through Charles Sprague, its general manager, several days before concluding the arrangements under which it purchased. On December 26, 1888, these negotiations resulted in a conveyance of the land by Boyes to the company for a cash payment of $100 and the further considerations expressed in the written agreement above set forth. There is no substantial disagreement between the parties as to the consideration for the conveyance, except as to the building of the hotel. This the company denies constituted a part of the consideration.

While the testimony of the respective parties on this point is conflicting, its clear preponderance supports the company's contention. The written contract makes no mention of the building of a hotel; and that it was not contemplated as among the other valuable improvements to be made, but that such improvements were to consist of waterworks, is shown by the clear weight of evidence.

The obligations it assumed are specified in the contract, and are as follows:

" Now, Therefore, If said company shall survey, grade and improve the streets on said lands, make other valuable improvements thereon, and commence within thirty days of the date hereof, to survey into lots, and plat said lands, or so much thereof as said company may deem practicable, and deed to said Boyes one-tenth of said lots so platted, to be divided as follows, to wit: " etc.

It commenced within the thirty days to survey into lots and plat the land, and completed that work and caused a plat thereof to be duly recorded on July 2, 1889.

While it is true, as stated in the opinion of the court of appeals, that a fractional part of some of the lots as platted lapped over on the land owned by appellant, it does not fol-

low that the lots so platted were not in conformity to the contract, or that such fact rendered the division provided for impracticable. To the contrary, it is shown that, owing to the formation of the ground, it was impossible to plat it in any other way, and that Boyes assented to the lots being platted in that manner. Mr. Dow's testimony on this point is as follows:

"Q. You may state about the time that you commenced platting this property or at any time during the platting or afterwards, you had any conversation with Mr. Boyes with reference to platting portions of your land in with this. A. Yes sir. Mr. Boyes came to me and said he didn't like the way we were platting it. I asked him why. He said 'Some of the lots will be on your property and some on the tract that I have sold you.' I told him it was impossible to plat it in any other way; on account of the formation of the ground we had to have the lots lap over, but told him wherever they lapped a little on ours he could choose them as if they were all on his, that we would make it perfectly satisfactory to him. Then he said, 'That is all right.' Those are the exact words he used. I told him of course we had to do that in platting. Q. Acting upon that, did you plat them? A. Yes, sir."

It is not apparent to us how the fact of platting in the manner described could be disadvantageous to appellees, since it gave ground additional to the amount they were entitled to out of the tract conveyed. Furthermore, the objection to the manner in which the lots were platted is an afterthought, and was not relied on by Boyes as a reason for refusing to select the lots, but his objection was put exclusively upon the ground that the lots were not to be divided until the other improvements were made. He testifies:

"Q. State what conversation you had with Mr. Dow, and when it was. A. After Mr. Sprague came up to divide the lots I saw Mr. Dow the next evening, and he wanted to know what was the reason I had not divided the lots. I told him they had not fulfilled their contract. He said they had

not agreed to make the improvements before we divided the lots. I told him I had not agreed to divide the lots until they were made. * * * Q. Did he say anything concerning the grading of the streets? A. He said they were not under any obligations to grade the streets then. Q. Have they ever done any grading on those streets at all? A. No sir. Q. Have they ever built that hotel? A. No sir. Q. Have they done any other improvement on there? A. No improvements whatever only the survey and what waterworks they have laid in there this winter."

The substantial controversy between the parties, and the sole ground upon which Boyes justified his refusal to divide the lots, was that at that time the streets were not graded and other improvements made. The time the grading was to be done and other improvements made not being specified in the written contract, we cannot agree with the learned writer of the opinion of the court of appeals that because those things were not then done that it constituted such a failure to perform as worked an absolute failure of consideration, or that its avowal of willingness and the intention to lay out and grade the streets when they should be needed was of no value. Nor do we find any evidence in the case that justifies the assumption that appellant had failed to realize upon the enterprise, was unable to comply with the contract entered into, and upon the technical interpretation of which it was attempting to escape. Certainly such a conclusion is unjustifiable in the light of the testimony and the acts of appellant evidencing its intention to prosecute such work in good faith. It had, within the time agreed upon, surveyed and platted so much of the land as was practicable into lots, at an approximate cost of $1,000, and at the time of the trial of the cause had let contracts for grading the streets and putting in the waterworks, thus refuting, by its acts as well as by the avowal of its intentions, the claim of appellees, that to induce Boyes to execute the deed, it promised more than it was able or intended to perform. The contract in express terms fixes the time for the com-

mencement of the survey and platting' of the lots, but does not limit the time in which the grading and other improvements should be entered upon or completed.

Upon an examination of all the testimony, we are unable to find any support for the conclusion that it was the understanding and intention of the parties that such work was to be done before a division of the lots should be made, or until it was needed; or that Boyes was induced by any false representations to execute the conveyance in question, or any failure on the part of the company to conform to the letter and spirit of its agreement.

We think undue weight is given by the court of appeals to the alleged inadequacy of the consideration for the conveyance of the land. While the deed includes 160 acres, it is shown that only one 40 was susceptible of being platted into town lots, and but three or four acres of that could be plowed, the balance consisting of precipitous mountain cliffs, and valuable only for the purposes to which appellant has devoted it; and although it is alleged that at the time of the conveyance it was worth $7,000, the evidence is substantially uncontradicted that its value then did not exceed $1,000, that being the most liberal estimate placed upon it by any witness except the plaintiff and the witness Florence, who shows by his examination that he was incompetent to estimate its value. Aside from these two witnesses, those testifying to the value at the time of the conveyance were Mr. Sprague, who put its value at $1,000; Mr. Dow at $500; Mr. Woodworth at $5.00 or $6.00 per acre; Mr. Nordhoff at $700 to $800; Mr. Riddick at $500 to $1,000; Mr. Garland at $500 to $1,000; Mr. Wright at $400 to $500. And by reason of the improvements made thereon by appellant, they fixed the value, at the time of the trial, at from $6,000 to $10,000, thus showing that by the expenditure and the improvements, made and contracted for, the value of the land was greatly enhanced, and was not in the same condition as at the time of the conveyance. It is apparent, therefore, that the anticipated benefits which constituted the main

consideration that induced Boyes to execute the conveyance were substantially realized, and his refusal to select the lots cannot be justified under the well established facts of the case ; and the district court properly dismissed the complaint "for want of equity," and granted the relief prayed in appellant's cross complaint.

It follows, therefore, that the judgment of the court of appeals must be reversed, and the cause remanded with directions to affirm the judgment of the district court.

*Reversed.*