## STATE OF IOWA;

### DES MOINES, JUNE TERM, A. D. 1865.

IN THE TWENTY-FIRST YEAR OF THE STATE.

PRESENT:

Hon. GEORGE G. WRIGHT, Chief Justice.
" RALPH P. LOWE,
" JOHN F. DILLON,      } Judges.
" CHESTER C. COLE,

MULLARKY, Administrator, v. THE TOWN OF CEDAR FALLS.

1. **Municipal corporation: BRIDGES.** An incorporated town being charged with the control over its streets and the duties to improve the same, may legitimately contract for the construction of free bridges over a stream dividing its streets, and issue its warrants or bonds to raise money to be so invested.

2. —— DEED OF TRUST: TOLL-BRIDGES. But such corporation has no power to execute a deed of trust conveying a bridge erected by the corporation to trustees, authorizing the charging of tolls thereon, and pledging the bridge and the tolls collected thereon for the payment of the debt created for its construction.

*Appeal from Black Hawk District Court.*

WEDNESDAY, JUNE 14.

PRIOR to 1858, one McClure had obtained from the county judge of Black Hawk county, the right and authority to erect a toll bridge over Cedar river, within the corporate limits of Cedar Falls. In accordance with a vote of the citizens of that town, the authorities thereof purchased the franchise, contracted for the erection of said bridge, and in payment for the labor and material, issued its obligations in the form of scrip or notes, of the denomination of one, three and five dollars, payable two years after date, with interest at six per cent.

By ordinance, it was declared to be a toll-bridge, the rates thereof being fixed, and the entire proceedings of the town council, in reference thereto, seem to contemplate making it a free bridge when the expenses of erecting and taking care of the same should be paid.

The bridge was erected, and the scrip issued; after this, by an arrangement between the town council and the holders of the scrip, it was funded, and the certificates or bonds of the town issued to the holders in $100 each, payable six years from date, with interest coupons attached payable annually. For the better securing of these bonds and the accruing interest thereon, a trust deed was executed to the persons, conveying to them the said bridge and franchise, and inviolably setting apart the tolls and receipts, after paying the expenses and repairs, and providing that after their payment the said bridge should be free.

This deed sets out in detail the rights, privileges and

obligations of all the parties in interest, and the trust was accepted by the trustees therein named.

After this the town repealed the ordinance fixing the tolls, discharged the toll-keepers, in effect repealed the ordinance under which the trust deed was executed, and declared the bridge free.

Thereupon the plaintiff's intestate (Andrew Mullarky, who has died since the commencement of this suit), being the holder of a number of these certificates, instituted this proceeding to enforce the execution of said trust deed according to its terms, and to recover judgment for the amount of interest due, and for general relief.

Judgment in accordance with the prayer of the bill, and defendant appeals.

*Powers and Preston & Son* for the appellant.

*W. T. Barker and S. P. Brainard* for the appellee.

LOWE, J.— There is no material difference between the parties as regards the facts in this case. The controversy turns upon certain propositions of law, bearing upon and growing out of the corporate powers of the town of Cedar Falls.

1. MUNICI-
PAL COR-
PORA-
TION:
bridges.

The town was laid off on both sides of Cedar river, and the streets upon either side correspond. Before it became incorporated as a town, a man by the name of McClure had obtained the right from the county judge to erect a toll-bridge over the river, within the limits of the town on one of the streets thereof. This right or franchise, when the town became incorporated, was purchased of McClure, and a bridge built under an authority given by a vote of its citizens. It is first objected, that the town, as a municipal corporation, could not legitimately build such a bridge. But when we look into the powers which its act of incorporation, under the laws of the State, confers upon

Mullarky, Adm., v. The Town of Cedar Falls.

the town, its control over the streets and its known duty to improve the same, so as to afford an easy and safe transit to all its parts, we do not feel at liberty to doubt the existence of the power, and its proper exercise in this case. The bridge in its construction cost some $12,000 or $15,000. To meet this expense the town issued its warrants or notes in denomination of one, three, and five dollars. Its power to do so are denied, but the object itself being legitimate, it becomes a necessary means to an end, and to do so was not an undue exercise of authority.

But it is claimed by the defense that these notes were issued in the form of bank bills, and were intended to circulate as money. Such is not our opinion, nor is this a material question now to discuss. The town authorities very soon retired this description of paper, issued its bonds in lieu thereof, as evidence of the debt, in sums of one hundred dollars each, running six years. Thus far we are inclined to think there was no infringement of its corporate powers.

But to secure the payment of these bonds in the hands of any and all holders, the town executed a deed of trust on the bridge, to three trustees, pledging the same and its tolls for that purpose.

This was done in pursuance of an ordinance passed by the town council, authorizing the same. There was an

2. —— deed of trust: toll bridges. ordinance, previous to this, fixing and imposing tolls for crossing the bridge. The deed of trust contained stipulations, by which the trustees were to collect those tolls, and apply them, after defraying expenses, to the payment of said certificate of indebtedness and the interest due thereon, and if final default be made, that the trustees should proceed to sell the bridge in the manner prescribed by the terms of the deed. The competency of the town to pass such an ordinance and to execute a deed with such stipulations and conditions, may well be questioned.

There is a marked difference between the building of a bridge as a necessary improvement of a street, and dedicating it to the public as a common highway or easement, and the erection of a toll bridge on the same street for the purposes of pecuniary profit. The one is legitimate, the other outside of the corporate powers. Not so distinctly, perhaps, as the establishment of a foundery, or the erection of a mill, and taking toll for grinding, yet somewhat similar in principle; and embarking in a business which does not fall within the necessary objects of a municipal corporation, and which had better be left to private enterprise.

Now the deed of trust, in the case at bar, violates this principle, perhaps in this particular case more in form than in substance, when the debt created in its construction was paid. Still it has the appearance of a business operation, and it is but the part of wisdom to confine the town, not only to proper municipal objects, but to the employment of lawful means in effectuating these objects.

This bridge was built by the town for the benefit of its inhabitants; it filled a hiatus in one of the streets, caused by Cedar river, and became thereby an integral part of the street itself, an easement that belongs to the public, of the management and control of which the town could not legitimately divest itself. Yet, by the terms of this deed of trust, three trustees were appointed to take exclusive charge of the same, and to collect tolls for the using thereof for a specific period, and then, in a given contingency, to sell the same with its franchise as a toll-bridge, thereby not only hazarding the title thereto, but liable to lose all jurisdiction and control over it as an important part of one of its streets. This is the exercise of too doubtful a power to be sanctioned by us, especially when we see a very simple, plain course open to the parties, which, if pursued, will protect the rights of all, violate no principles, reach

the ends of justice, and establish no precedent that will prove mischievous hereafter. We refer to a remedy upon the bonds themselves, which we hold to be valid and available to the holders.

A judgment upon them may be satisfied out of any corporate property not exempt from execution, which the town might have. If none should be found, the corporate authorities would doubtless take measures to meet these obligations by the assessment and collection of the requisite amount of tax for that purpose. Believing, as we do, that the terms and conditions of the deed of trust cannot regularly and legally be enforced, we feel inclined to reverse the judgment below, and remand the case to be disposed of according to the method and suggestions herein stated.

Affirmed, but modified.