(No. 5509. May 25, 1931.)

J. PAUL EVANS, Appellant,· v. POWER COUNTY, IDAHO, a Municipal Corporation, and CITY OF AMERICAN FALLS, IDAHO, a Municipal Corporation, et al., Respondents.

[1 Pac. (2d) 614.]

F. M. Bistline, for Appellant.

Bissell & Bird and A. Humphrey, for Respondents.

VARIAN, J.—Appellant commenced this action to quiet title to certain lands situate in Power county, Idaho. The complaint is in the usual simple form and does not set up the basis of appellant's claim of title. The answer asserts ownership in the defendants and denies ownership by appellant. At the trial appellant introduced documentary evidence establishing chain of title in him through deeds from L. L. Evans, L. L. Evans, Jr., and Evans Brothers Land & Livestock Co., a corporation, and redemptions made from execution sale, etc. Respondents rely upon purchase of the property in question through execution sales made prior to any deeds to appellant.

The cases involved were actions upon depository bonds, four of which have been before this court heretofore on appeal. (See *Power County v. Evans Bros. Land & Livestock Co. et al.*, 43 Ida. 158, 252 Pac. 182; *Power County v. Evans Bros. Land & Livestock Company et al.*, 43 Ida. 171, 252 Pac. 185; *City of American Falls v. Evans Bros. Land & Livestock Company et al.*, 43 Ida. 172, 252 Pac. 185; *Independent School District No. 1 v. Evans Bros. Land & Livestock Company et al.*, 43 Ida. 173, 252 Pac. 185.)

While this appeal was pending appellant brought an original proceeding in this court to prohibit the trial judge and clerk of the district court from certifying to us certain exhibits (part of the files in certain actions) which had theretofore been copied and certified by the court reporter under stipulation of counsel. (*Evans v. District Court of Fifth Judicial District et al.*, 50 Ida. 60, 293 Pac. 323.) It was there held that the question raised could properly be determined on this appeal and the writ was denied. Thereafter, appellant filed a motion to strike from the record on appeal, certain enumerated files, writs, returns, notices, minute entries, orders, etc., not properly included in the judgment-rolls of the various cases to which they refer, upon the ground that only the judgment-rolls of said cases and none of the papers and files listed in the motion to strike were in evidence.

Apparently, the judgment-rolls had not been made up in the several cases and counsel had all of the records and files therein in court. It was stipulated that it would not be necessary to mark each paper in each case and that each was in evidence pursuant to stipulation, subject to appellant's objection (as to competency and relevancy). Prior to their admission, the following took place:

Mr. Humphrey (of counsel for respondents): "There are so many of these exhibits it is possible to leave out one and we don't want to take the court's time and if we find we have left a document out we would like the privilege to introduce it and grant the other side the same privilege."

The Court: "Any objection to that?"

Mr. Bistline: "No."

The Court: "Leave will be granted, in the event you discover omissions, either side to supply them."

In his order settling the transcript the trial judge certified to the use of the papers and files in controversy, pursuant to the above stipulation, as follows:

"It is further certified, that the appellant contends that some of the certified copies of papers made by the reporter were not included in the evidence actually offered at the trial. The trial court in passing upon the merits of the

case considered all the papers now certified to by the reporter, pursuant to the stipulation made at the trial found at page 16, of the reporter's transcript that either side might supply any omissions in its documentary evidence, and the court did not confine its inquiry in passing upon the merits of the case to the papers in those prior cases which strictly speaking comprise the judgment rolls, but it considered all of the papers and files in each of said cases, respectively."

While there was subsequently some conversation between counsel as to judgment-rolls, it is apparent from the foregoing that it was the understanding of the court and counsel that all omissions might be supplied. Indeed, appellant offered as an excuse for failure to brief or argue the case in the trial court that he was endeavoring to collect some further evidence to present to the court by deposition. Appellant is bound by his stipulation (*Evans v. District Court of the Fifth Judicial District et al., supra*) and the motion to strike is denied.

Eleven actions were commenced in the district court for Power county within a thirty-day period, each of which was diligently prosecuted to final judgment. The aggregate amount of said judgments was approximately $118,-372.88, without interest. The first action, No. 1563, was commenced on June 12, 1923, attachment issued therein and was levied upon most of the lands involved in this action, as well as certain other lands and property. After judgment in said case No. 1563 for $18,870.78 in the aggregate, against several defendants therein, execution issued and sale noticed thereunder. Writs of attachment were issued in nine of the eleven actions, but sales were had under executions issued in four cases, Nos. 1565, 1571, 1572 and 1574 only. Appellant contends that the aggregate amount realized from the sales in the last-named four cases, i. e., $105,436.22, is far in excess of the aggregate amount of the remaining ten judgments in all the cases subsequent to case No. 1563, and that in each of said cases the judgments could have been fully satisfied from executions issued therein. His contention seems to be that because the sale

on execution was had in cases subsequent to case No. 1563, the proceeds thereof could not be prorated with the judgment in said case; that the statute C. S., sec. 6781, as amended by Sess. Laws 1921, chap. 206, does not authorize the proration of the judgment in the first case, No. 1563, with the proceeds of the subsequent sales and that, having failed to sell under execution in case No. 1563, he lost his right to payment of said judgment. To executions issued in cases Nos. 1563, 1566, 1569, 1570 and 1573, the sheriff returned that because the property levied upon had theretofore been sold under execution in cases Nos. 1565, 1571, 1572 and 1574, no bids were made upon said property.

▇▇▇▇ Judgment was entered in both cases, Nos. 1563 and 1565 (under which the principal execution sale was had) ·on the same date, October 23, 1924. The identical property was levied on in attachment in each case. The attachment liens, therefore, merged in the judgment liens on the same date. (*Hanson v. Morrison et al.*, 30 Ida. 422, 165 Pac. 521; *First National Bank v. Lieuallen*, 4 Ida. 431, 39 Pac. 1108.) The amount realized from the property sold under execution in case No. 1565 was as much the "proceeds" of the attachment in case No. 1563 as it was the "proceeds" of the sale of the same property under attachment in case No. 1565. The property was seized under the first attachment and the notice required by C. S., sec. 6781, as amended, *supra*, to be published and posted, was to give notice to creditors of the attachment so that they might commence their actions within thirty days thereof and proceed diligently to reduce their claims to final judgment and share in the proceeds of the defendants' attached property. Nor was it necessary to issue attachments in the subsequent actions to entitle the plaintiffs who obtained judgments therein to prorate in the proceeds of the property attached in the first action. (*Greene v. Rice*, 32 Ida. 504, 186 Pac. 249; *National City Bank v. Idaho Lumber Co.*, 39 Ida. 677, 229 Pac. 663.) The right to prorate does not depend upon knowledge of the posting or publication of the notice that a writ of attachment has issued. (*Quirk v. Diana Mines Co., Ltd.*, 34 Ida. 30, 198 Pac. 672.)

It was immaterial whether the attached property was sold under execution issued in case No. 1563 or case No. 1565. The fact it was sold under execution in the last case does not affect either the validity of the sale thereunder nor the right to prorate in the proceeds thereof. (See 6 C. J. 303; *Claflin v. Doggett*, 3 Colo. 413; *Gay v. Rainer*, 89 Ill. 221, 31 Am. Rep. 76.)

Again, appellant contends that, the plaintiff in case No. 1563 not having intervened in case No. 1565, as authorized by C. S., sec. 6655, was without right to prorate in the proceeds of the sale of the property attached in both cases and sold under execution in case No. 1565, and cites *First National Bank of Portland v. Denbrae Sheep Co.*, 44 Ida. 447, 258 Pac. 365. In that case the plaintiff sued his debtor, defendant in a former attachment suit, and the surety on two redelivery bonds in attachment proceedings under C. S., sec. 6811, which attachment had theretofore been dismissed and the attachment bond exonerated, without the bank's knowledge, by stipulation of parties. The plaintiff bank, having obtained a judgment within the time limited by C. S., sec. 6781, as amended, *supra,* sought to recover its *pro rata* share of the proceeds of the attached property. This court held that before a recovery can be had on a redelivery bond, under the provisions of C. S., sec. 6811, there must be an adjudication in the attachment suit setting aside the order dismissing the suit and that a complaint in the action on the redelivery bonds not alleging that plaintiff appeared in the attachment suit, by intervention under C. S., sec. 6655, or otherwise giving notice of his claimed right to prorate, was insufficient to authorize the exoneration of the bond and dismissal of the suit. The controversy in that case was primarily between creditors of the attachment defendant. In the instant case, the action relates to title to lands sold at execution sale. There is no dispute here by creditors as to the proration of the proceeds of sales of attached property. If the execution sales were valid, appellant, as subsequent grantee of defendants in the attachment suit, has no interest in the disposition of the proceeds of such sale, as it appears that

they were insufficient to satisfy in full the judgments of all the creditors entitled to prorate therein. In any event, creditors do not have to intervene in the attachment suit, in order to prorate in the proceeds of the attached property, provided they commence their actions in time and prosecute them diligently to final judgment, where the attachment action is not dismissed but likewise prosecuted to final judgment.

Appellant urges, because of the great costs incurred in presenting the record here, that his motion to strike, herein denied, should be considered. We feel that the volume of exhibits in this case could have been greatly reduced had appellant indicated his position to the trial court. He chose to stand upon his rights, did not disclose the points of his attack and compelled respondents to produce the entire record of all the cases involved out of an abundance of caution, being ignorant, until the case appears here, of the exact position of the appellant. The trial judge, under the circumstances, was justified in admitting and considering all the evidence sought to be stricken.

The complaint alleges that A. Humphrey is purporting to act as trustee for Power county, Idaho, City of American Falls, Idaho, and Independent School District No. 1, of Power county, Idaho, which was admitted, and the court found that he was trustee and attorney for said corporations, as well as the Fidelity and Deposit Company of Maryland, and the Federal Reserve Bank of San Francisco, California, and as such, had charge of the business of enforcing and collecting the various judgments in favor of said corporations, municipal and private, and buying in the properties sold on executions under said judgments with the approval and acquiescence of said corporations.

Appellant contends that, primarily, a county, city or school district cannot purchase property at execution sale under a judgment in its favor, unless it be either directly, or indirectly through an agent or trustee, for a public purpose. C. S., sec. 3396 declares every county to be a "body politic and corporate, and as such has the powers specified in this title or other statutes, and such powers as are

necessarily implied from those expressed.'' C. S., sec. 3399, enumerates, among others, the following powers of counties, to wit: ''To sue and be sued. To purchase and hold lands within its limits.'' And Sess. Laws 1921, chap. 215, sec. 3, declares independent school districts to be bodies corporate with power to ''sue and be sued and acquire, hold and convey real and personal property necessary to its establishment, extension and existence.'' C. S., sec. 3929, defining the general powers of municipal corporations, reads as follows:

''Sec. 3929: Corporate Powers. Municipal corporations governed by this title shall be bodies corporate and politic, and may sue and be sued; contract and be contracted with; acquire, hold and convey property, real and personal; have a common seal, which they may change and alter at pleasure; and exercise such other powers as may be conferred by law; Provided, That real property shall be conveyed in the manner prescribed by this chapter.''

C. S., sec. 3422, authorizes the board of county commissioners ''To purchase, receive by donation, or lease any real or personal property necessary for the use of the county.''

Appellant cites *Williams v. Lash,* 8 Minn. (Gil. 441) 496, to the effect that such purchase by the county at execution sale on a judgment in its favor, is invalid. The statute in the Minnesota case authorized a county to purchase and hold property ''for the public use of the county and to sue and be sued, etc.'' (Sec. 251, Comp. Stats. Minn. 109.) In the subsequent case of *Shepard v. Malhoit,* 33 Minn. 519, 24 N. W. 291, cited by appellant, the Minnesota court held that under acts of the legislature passed in 1864 and 1866 the county could then hold lands bid in on execution sale to satisfy a judgment. In the other case cited by appellant, *Ray County, etc., v. Bentley,* 49 Mo. 236, the county bid in mortgaged property at foreclosure sale to satisfy a school debt as a trustee of a school fund. The court said, ''The county is not the creditor, and it has no right to bid in the property and undertake to manage it for the benefit of the school fund.'' (*Ray County, etc., v. Bentley, supra,* p. 242.) Conceding these cases to be in point the

better rule is that where public corporations, such as those enumerated, are expressly authorized by statute to sue and be sued, the right to have judgment and execution necessarily follows. To prevent them from acquiring the full benefits of their judgments by purchase at execution sale is wholly inconsistent with the general powers conferred by statute. If they cannot buy in the property to secure the payment of their judgments in cases where there are no other bidders, they must lose the amounts of their claim entirely. Where the other bids are below the fair cash value of the property sold, these public corporations would be compelled to take less for their judgment debt than private corporations or individuals similarly situated. The statutes give them the same right as other creditors to place their demands in judgment; it therefore follows that these corporations have the same right to enforce their judgments as other creditors in order to protect their pecuniary interests. (*Van Kirk v. Clark,* 16 Serg. & R. (Pa.) 286; *Town of Corinth v. Locke,* 62 Vt. 411, 20 Atl. 809, 11 L. R. A. 207.) Again, appellant says that the execution sales were invalid because the municipal corporations involved lacked authority to hold their property in the name of a trustee for that purpose, and cites *Mullarky v. Town of Cedar Falls,* 19 Iowa, 21 and *Root v. Shields,* 20 Fed. Cas. 1160, No. 12,038, in support of this contention. Neither case is in point. In the Iowa case, trustees of a town built a toll-bridge across a stream dividing the town and conveyed it to trustees to manage, collect the tolls and pay the bonded indebtedness incurred in erecting the bridge. The court held that while the town might build a free bridge and issue its bonds therefor, it could not go into the business of operating a toll-bridge for profit through trustees. The federal case holds that the common-law rule that a municipal corporation cannot take title in another's name in trust for itself has been changed in Nebraska by statute. Neither case involved the purchase of property at execution sale. Here there were three municipal and two private corporations, each entitled under our attachment law to prorate in the proceeds of the property sold under sev-

eral executions. Had all been private corporations, the natural and usual procedure, to conserve the assets and cut down unnecessary costs, would be to designate someone to act as trustee to bid in the lands at execution sale and dispose of them to the best advantage of all concerned. But in any event, appellant, who stands in the shoes of judgment debtors named in the several judgments, cannot be heard to complain if the sale was otherwise valid and legally conducted. In this action he does not plead incapacity of the trustee to act nor was this question raised in the court below. In a case involving this same trust, Circuit Judge Wilbur said:

"This money he claimed was money belonging to the corporations for which he claims to be trustee. If the money was his own and the judgment was assigned to him, the judgment debtor could not be concerned in the fact that he nevertheless characterized himself as trustee. If the money did not belong to him and did belong to the corporations for which he claimed to be trustee, the law would raise a resulting trust in favor of these corporations to the extent of their ownership of the money, and the judgment debtor could not complain of the fact that Mr. Humphrey recognized their obligation by formally declaring himself the trustee of such corporations. We need not decide the contention raised by the appellant, to the effect that the contracts with the municipal corporations under which Mr. Humphrey purported to be acting were *ultra vires,* for in any event it is immaterial to the judgment debtor whether Mr. Humphrey was acting individually or as trustee." (*Evans v. Humphrey et al.,* 38 Fed. (2d) 984.)

It is next contended that the sheriff sold certain property standing in the name of L. L. Evans after the execution was exhausted. This contention is based upon the assumption that the judgment in case No. 1563 did not prorate in the sales of the attached property. At the time of the sale the sheriff held executions in cases No. 1563, on a judgment against L. L. Evans for $15,000 and interest, and No. 1565, on a judgment against L. L. Evans, for $14,599.53. Property standing in the name of L. L. Evans was noticed

for sale under both executions for the same time and sold under the execution in case No. 1565. Since we have held, *supra*, that the judgment creditors in the entire eleven cases were entitled to prorate in the proceeds of the attachment in case No. 1563, the execution under which the sale in fact was held, was not exhausted, because the total amount of the judgments in the eleven cases against L. L. Evans, exceeded the total amount realized on the execution sale. The amount realized at the sale was insufficient to satisfy any one of the judgments, since all were entitled to prorate in the proceeds of the sale.

D. W. Church, as receiver of the First National Bank of American Falls, Idaho, on November 10, 1924, recovered two judgments in the federal court against L. L. Evans and L. L. Evans, Jr., respectively. An attested copy of each of said judgments was duly filed in the office of the county recorder of Power county, on December 4, 1924. Pursuant to order of court, the successor of D. W. Church as receiver, on December 12, 1925, duly assigned each of said judgments to A. Humphrey, trustee. Because the actions in which said judgments were entered were not commenced within thirty days after the attachment levy in case No. 1563 (C. S., sec. 6781, as amended, *supra*), the Church judgments were not entitled to prorate in the proceeds of said attachment had on December 17, 1924, under execution issued in case No. 1565. Certain parcels of land belonging to L. L. Evans and L. L. Evans, Jr., were bid in by the respondent, A. Humphrey, trustee, at said sale.

On December 15, 1925, appellant, J. Paul Evans, as successor in interest of L. L. Evans and L. L. Evans, Jr., redeemed said parcels of land, sold on December 17, 1924, as aforesaid, from said execution sale. Under executions issued out of the federal court in each of said cases, on April 19, 1926, the U. S. marshal levied upon and sold all of the said redeemed lands as the property of L. L. Evans and L. L. Evans, Jr., respectively, to the said A. Humphrey, trustee, and issued deeds therefor, April 20, 1927.

The liens of the two judgments in the federal court attached to the said lands belonging to L. L. Evans and L. L.

Evans, Jr., on December 4, 1924, under C. S., sec. 6907, but were inferior to the liens of the eleven judgments in the state court in which the attachment liens merged, said eleven judgments being of equal rank.

When the sale of December 17, 1924, was had the effect was to extinguish all the judgment liens, and the purchaser acquired the property subject to the right of redemption. The effect of the execution sale was that L. L. Evans and L. L. Evans, Jr., lost, and A. Humphrey, trustee, acquired, title to the lands in controversy, subject to the Evans' title being restored to them, or their grantee, by redemption within one year of the date of sale. (*Keel v. Vinyard*, 48 Ida. 49, 279 Pac. 420; *Steinour v. Oakley State Bank*, 45 Ida. 472, 262 Pac. 1052.) The redemption of the lands by the assignee of L. L. Evans and L. L. Evans, Jr., did not give a new title but merely restored to the owners, or their successor in interest, the former's title, freed of the incumbrance of the liens foreclosed but subject to all other liens. (*Kilpatrick Bros. Co. v. Campbell*, 48 Ida. 194, 281 Pac. 471.) Since the eleven judgments in the state court were of equal rank and each participated in the proceeds of the execution sale of December 17, 1924, by virtue of the provisions of C. S., sec. 6781, as amended, *supra,* the redemptioner took the property subject to the liens of the judgments in the federal court against L. L. Evans and L. L. Evans, Jr., respectively.

J. Paul Evans, after redemption, held the property subject to the liens of the judgments of the federal court and it was liable in execution under those judgments, and we so hold.

Appellant urges that the municipal corporations here involved were without capacity to purchase the federal court judgments and that proceedings in execution thereunder are void. Conceding there was no authority in the trustee to make this purchase, nevertheless appellant cannot be injured thereby.

If Mr. Humphrey exceeded his powers and purchased these judgments with money belonging to the said municipal corporations, the law would declare a resulting trust

in favor of the municipal corporations, the transfer would not be void to the extent that execution could not issue and a valid sale had thereunder. If he purchased the judgments with his own funds but took the assignments of judgment in his own name as trustee, or otherwise, it is immaterial so far as appellant is concerned in this action. (See *Evans v. Humphrey et al., supra.*)

In case No. 1589, filed within thirty days of the issuance of the writ of attachment in case No. 1563, and diligently prosecuted to final judgment, no writ of attachment issued. The judgment therein prorated in the proceeds of sales of property seized under attachment in case No. 1563. Later, under execution issued in case No. 1589, held August 2, 1926, real property was sold for an amount in excess of the amount of the unsatisfied judgment as of that date. Appellant urges that said execution was satisfied before the sale of the NW.¼ of Sec. 26, Twp. 6 S., R. 33 E., B. M., and as to this parcel the sale was, therefore, void. The evidence shows that L. L. Evans, president of defendant Evans Brothers Land & Livestock Company, and Mr. Myers, its attorney in all the actions herein mentioned, wherein it was a party, had various conferences with A. Humphrey, trustee, relative to the properties owned by said company. Prior to August 2, 1926, it was agreed by Mr. Myers and Mr. Humphrey that the latter would get out but one execution against Evans Brothers Land & Livestock Company, in case No. 1589, and sell all its remaining property under that, rather than resort to the expense of several executions and sales under the other judgments against said company. Mr. Myers said he would not object to the excessive bid, since it would save expense, provided the surplus was distributed properly and it was then agreed as to how the surplus should be distributed and applied toward the payment of certain other judgments against the same defendant. This agreement was carried out and the allocation thereafter approved by attorney Myers.

While the general rule undoubtedly is that an attorney has authority, by virtue of his employment as such, to do on behalf of his client all acts, in or out of

court, necessary or incidental to the prosecution and management of the suit and affecting the remedy, he has no power to compromise or release the cause of action itself. (*Storey v. United States Fidelity etc. Co.*, 32 Ida. 388, 183 Pac. 990.) The agreement in question was not a compromise or release of a cause of action as appellant contends. However, the attorney may give binding directions regarding an execution sale. "Reasonable stipulations regarding the sale are also within the scope of a general retainer." (6 C. J. 656.) Mr. Myers was the attorney for the defendant, not only in case No. 1589 but in the other cases to which allocations of the overplus were made.

Furthermore, the record shows the property in question was sold at execution sale under date of August 2, 1926; that the judgment debtor conveyed the same by quitclaim deed to appellant October 20, 1926, and that no attack on the sale was made until the institution of the present suit to quiet title, September 4, 1928. The proceedings were matters of public record, which, under the circumstances of this case, must have been known to the officers and agents of Evans Brothers Land & Livestock Company, and by failure to make prompt objection to the sale, that company impliedly ratified the agreement made by its attorney. (See 6 C. J. 670; 1 Thornton on Attorneys at Law, 374, 379.)

Appellant contends that paragraph 1, C. S., sec. 6573, reading: "An attorney and counsellor has authority: 1. To bind his client in any of the steps of an action or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise," controls and that the agreement not being filed with the clerk, or entered in the minutes of the court, was void. The portion of the statute quoted has no application here since the sale under execution was not a step of the action. The action had already gone to judgment. (*Storey v. United States Fidelity etc. Co., supra.* See *Smith v. Whittier*, 95. Cal. 279, 30 Pac. 529; *Daneri v. Gazzola et al.*, 2 Cal. App. 351, 83 Pac. 455, holding that such a statute refers to executory agreements and not to those wholly or in part

executed.) In the absence of any showing that the agreement had been reduced to writing, the court did not err in permitting oral testimony to establish it.

We have examined all the assignments and, finding no substantial error in the record, the judgment is affirmed.

Costs to respondents. *Rehearing denied.*

Lee, C. J., and Givens and McNaughton, JJ., concur.

Budge, J., dissents.