(No. 5689.  April 25, 1932.)

J. PAUL EVANS, Appellant, ·v. CITY OF AMERICAN FALLS, IDAHO, and POWER COUNTY, IDAHO, et al., Defendants; CITY OF AMERICAN FALLS, IDAHO, et al., Respondents.

[11 Pac. (2d) 363.]

F. M. Bistline, for Appellant.

Bissell & Bird and A. Humphrey, for Respondents.

LEEPER, J.—This is the most recent of a series of cases which have come before us involving various phases of liability arising out of certain depository bonds given on behalf of certain banks in Power county, now insolvent. (*Power County v. Evans Brothers Land & Livestock Co.*, 43 Ida. 158, 252 Pac. 182; *Power County v. Evans Brothers Land & Livestock Co.*, 43 Ida. 171, 252 Pac. 185; *Independent School District v. Evans Land & Livestock Co.*, 43 Ida. 173, 252 Pac. 185; *City of American Falls v. Evans Land & Livestock Co.*, 43 Ida. 172, 252 Pac. 185; *Evans v. District Court*, 47 Ida. 267, 275 Pac. 99; *Evans v. District Court*, 50 Ida. 60, 293 Pac. 323; *Evans v. Power County*, 50 Ida. 690, 1 Pac. (2d) 614; *Evans v. City of American Falls*, 51 Ida. 89, 1 Pac. (2d) 632; *Evans v. Humphrey*, 51 Ida. 63, 1 Pac. (2d) 626; *Evans v. Humphrey*, 51 Ida. 268, 5 Pac. (2d) 545.) For the purposes of this decision it is unnecessary to enter into a detailed discussion of this past litigation, a bare recital of those facts pertinent to the issues of this case being sufficient.

Case No. 1565 was an action instituted in Power County on the sixteenth day of June, 1923, by the City of American Falls, a municipal corporation, against the First National Bank of American Falls, an insolvent bank, D. W. Church,

its receiver, L. L. Evans, L. L. Evans, Jr., H. C. Allen, J. T. Fisher and Evans Brothers Land and Livestock Company, a corporation. The action was brought to recover the sum of $17,556, with interest, which had been deposited in the defunct bank, and to have judgment in that amount against the defendants other than the bank and its receiver upon two depository bonds executed by them to secure to the municipality repayment of these deposits.

The larger of these bonds is in the penal sum of $20,000, and these portions of it are pertinent to our inquiry:

## "DEPOSITORY BOND.

"Know All Men by These Presents: That the First National Bank of American Falls, Idaho, as principal, and L. L. Evans and J. T. Fisher, H. C. Allen, L. L. Evans Jr., and Evans Brothers Land and Livestock Company, a corporation, as sureties, are held and firmly bound unto the City of American Falls, Idaho, in the sum of twenty Thousand and no/100 dollars ($20,000) for the payment of which well and truly to be made, we bind ourselves, our, and each of our heirs, executors, successors and assigns jointly and severally, as hereinafter provided.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The amounts hereunder for which the said bondsmen shall be severally held are as follows, and not to exceed such amounts, to-wit:

| "L. L. Evans | Eleven Thousand Dollars |
| J. T. Fisher | Twenty-Seven Hundred and Fifty Dollars |
| L. L. Evans, Jr. | Eleven Hundred Dollars |
| H. C. Allen | Seven Thousand Dollars |
| Evans Brothers Land and Livestock Company | Fourteen Thousand Dollars." |

The other bond is in the penal sum of $4,000 and similar portions of it are:

## "DEPOSITORY BOND.

"Know All Men by These Presents: That the First National Bank of American Falls, Idaho, a banking corporation,

of American Falls, County of Power, state of Idaho, as Principal, and L. L. Evans and L. L. Evans, Jr., and H. C. Allen, of the same place, as sureties, are held and firmly bound unto the City of American Falls, State of Idaho, in the following penal sums, to-wit: The said principal, The First National Bank of American Falls, Idaho, in the penal sum of Four Thousand and no/100 Dollars ($4,000), and the said sureties in the following sums, to-wit: The said L. L. Evans in the penal sum of Two Thousand ($2,000) Dollars; The said L. L. Evans, Jr., in the penal sum of One Thousand ($1,000) Dollars; and the said H. C. Allen in the penal sum of One Thousand ($1,000) Dollars; for the payment of which well and truly to be made, we hereby bind ourselves, our and each of our heirs, executors, administrators and assigns, jointly and severally by these presents."

The case proceeded to judgment on October 22, 1924, the decree providing, *inter alia:*

"It is Hereby Ordered, Adjudged and Decreed, That plaintiff, City of American Falls, Idaho, a municipal corporation, do have and recover *a joint judgment against the defendants,* L. L. Evans, L. L. Evans, Jr., H. C. Allen, J. T. Fisher and Evans Brothers Land and Livestock Company, a corporation, in the sum of $17,556.01, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree, and costs of suit taxed at $——.

"And that said plaintiff do have and recover *several judgments* against said defendants *for the portions of the said joint judgment* for which they are each severally liable as follows, to-wit:

"Against defendant L. L. Evans (Sr.) in the sum of $13,000, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree and costs of suit taxed at $——.

"Against L. L. Evans, Jr., in the sum of $2100, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree and costs of suit taxed at $——.

"Against defendant H. C. Allen in the sum of $8,000, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree and costs of suit taxed at $———.

"Against defendant J. T. Fisher in the sum of $2750, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree and costs of suit taxed at $———.

"And against defendant Evans Brothers Land and Livestock Company, a corporation, in the sum of $14,000, together with interest thereon at the rate of 7 per cent per annum from and after February 9, 1923, to date of this decree and costs of suit taxed at $———." (Italics ours.)

This judgment was affirmed by this court on October 19, 1926, without opinion (43 Ida. 172, 252 Pac. 172), following the opinion in *Power County v. Evans*, 43 Ida. 158, 252 Pac. 182. Prior to the decision by this court executions had been levied against the property of these defendants in this and ten other companion cases, and on December 17, 1924, a sale was had which is commonly referred to as "the big sale," at which many tracts of land belonging to various defendants were sold, among them the lands described in this complaint and to which plaintiff seeks to quiet title.

This land consists of approximately 505 acres, is located in Power County, and was owned by and stood upon the records in the name of L. L. Evans at the time of the big sale. By quitclaim deeds dated December 12, 1925, and a subsequent correction deed dated December 22, 1925, the appellant here, J. Paul Evans, acquired title to the property in question, subject to the execution sale aforesaid, and he thereafter redeemed it from the sale by paying the sum of $4,675, including the statutory penalty. This redemption money was received by Humphrey, one of the respondents, as trustee for the judgment creditors, and prorated among them.

In the meanwhile, one Church, as receiver for the defunct First National Bank of American Falls, had obtained a judgment in the federal court against L. L. Evans upon

a stockholder's liability in the principal amount of $13,500. This judgment was acquired and filed for record in Power County on December 4, 1924, before L. L. Evans had executed the quitclaim deeds in favor of appellant, and consequently became a lien upon the premises in question. This federal court judgment was later purchased by Humphrey for $2,500 and after the first redemption by J. Paul Evans the land was again sold under execution by the United States marshal, and Humphrey took a certificate of sale. This sale was contested by J. Paul Evans but was upheld by this court. (*Evans v. Power County*, 50 Ida. 690, 1 Pac. (2d) 614.) Thereupon, on the eighteenth day of April, 1927, J. Paul Evans redeemed from this sale for the sum of $6,259.17.

It appears that after the application of proceeds derived from the big sale *pro rata* among all the judgments there remained unpaid on the so-called principal judgment in case No. 1565 the sum of $1,050. It later developed that title had failed as to certain premises sold as the property of the Evans Brothers Land and Livestock Company, for the sum of $5,520, and certain other premises sold as the property of H. C. Allen for the sum of $2,000. Thereafter the plaintiff in case No. 1565 moved to revive that judgment in accord with the provisions of C. S., sec. 6939, in the amount of $7,520, pursuant to proceedings shown in the record, and on November 9, 1925, a judgment of revivor was entered by the court, in the following language:

" . . . . It is therefore ordered, adjudged and decreed by the Court that the said judgment be and the same is hereby revived to the extent of $5,520.00 on account of the bid on the property first herein above described, and that said judgment be and the same is hereby revived in the sum of $2,000.00 on account of the bid on the property secondly herein above described, making in all which said principal judgment is hereby revived the sum of $7,520.00.

"And it is further ordered that the said sum of $7,520.00 bear interest at seven per cent per annum from December

17th, 1924, until paid, and that execution shall issue on said judgment as revived.

"And it is further ordered, adjudged and decreed by the Court that the said individual judgment against said Evans Brothers Land and Livestock Company be and the same is hereby revived to the extent of $5,520.00, and that the said sum shall bear interest at the rate of seven per cent per annum from the 7th day of December, 1924, until paid, and that execution issue on said judgment as revived.

"And it is further adjudged and decreed by the Court that said individual judgment against said H. C. Allen be and the same is hereby revived to the extent of $2,000.00 and that said sum shall bear interest at the rate of seven per cent per annum until paid and that execution shall issue on said judgment as revived."

On December 16, 1925, an order was entered in case No. 1565 reviving the "Joint judgment" in the sum of $8,600 and the several judgment against H. C. Allen in the same amount. On April 3, 1926, a similar order was entered reviving the *"joint principal judgment"* in the sum of $1,175, and the *individual judgments* against L. L. Evans in the sum of $600, against L. L. Evans, Jr., in the sum of $500 and against H. C. Allen in the sum of $75. This latter was the judgment considered by this court in *Evans v. Humphrey,* 51 Ida. 268, 5 Pac. (2d) 545, but inasmuch as both of the aforesaid revivor judgments were entered after this appellant acquired title to the lands over which this litigation is waged, a consideration of them is not necessary here. The matters here decided were not considered in *Evans v. Humphrey, supra.*

On the sixteenth day of April, 1927, two days before the redemption from the Church judgment was accomplished, Humphrey, as trustee, caused an *alias* writ of execution to issue in case No. 1565, wherein, after an involved recital of all past transactions with reference to the original judgment, executions thereunder and revivals thereof, the sheriff was required to execute the judgment as follows:

"Now you, the said sheriff, are hereby required to satisfy the balance of the said principal joint judgments consisting of the following items, to-wit:

"A. The balance of the original principal joint judgment actually remaining due and unpaid, in the sum of $1,050.00, together with interest thereon at the rate of 7 per cent per annum from August 2nd, 1926.

"B. The balance of said principal joint judgment as revived by the order of the Court duly entered on the 9th day of November, 1925, in the sum of $4,028.00, together with interest thereon at the rate of 7 per cent per annum from August 2nd, 1926.

"C. The balance of said principal joint judgment as revived by the order of the Court duly entered on the third day of April, 1926, in the sum of $455.73, together with interest thereon at the rate of 7 per cent per annum from August 2nd, 1926."

Pursuant to this execution the sheriff on June 2, 1927, again sold the premises in question to Humphrey for the sum of $4,443.47 and issued the customary sheriff's certificate. In his notice of sale the sheriff recited: "And that the above described property, or so much thereof as may be necessary to satisfy the amount due on said judgment as revived by said order of court, duly entered on the 9th day of November, 1925, will be sold, etc." In his return the sheriff certified: "Which leaves as the net proceeds of said sale the sum of $4,291.17 to be applied on the said revival judgment of November 9th, 1925, which was and is the total amount due on said revival judgment of November 9th, 1925, and I, therefore, return this execution fully satisfied as to said revival judgment of November 9th, 1925, only; but, as to all other judgments, original, principal and several and individual judgments in said execution described, I return this execution no part satisfied."

The appellant did not redeem from the last sale, and thereafter filed this suit to quiet title. Defendants answered, denying generally and setting up by way of cross-complaint a valid title in Humphrey derived through the

sheriff's sale of June 2, 1927. Upon the issues thus framed the court entered a judgment on September 13, 1930, denying plaintiff relief and quieting title in Humphrey as trustee. Defendants also raised the question of *res adjudicata*, but the lower court made no findings on that point, nor have either counsel discussed the matter in their briefs, so we shall not consider this defense further. From this decree appellant has appealed, raising only these two questions which merit consideration: First, that the judgment in case No. 1565 was not revived as to L. L. Evans by the order dated November 9, 1925, and that consequently execution and sale thereunder was void and respondent Humphrey acquired no valid title thereby. Second, that this land cannot be sold under the revived judgment in case No. 1565, even if that judgment were valid, because it had already been sold under the original judgment on December 17, 1924, and redemption had therefrom by this appellant as grantee of L. L. Evans, the original judgment debtor.

With reference to the first question, there seems to have been considerable confusion throughout this litigation as to the distinctions which exist between joint, several and joint and several liabilities. Beginning with the judgment which was entered in case No. 1565 on October 22, 1924, this lack of clarity is apparent. In this judgment the court directed that the plaintiff recover "a *joint judgment* against all of the sureties in the principal amount of $17,556.01." In the same decree several judgments were entered against each of the five bondsmen in varying smaller amounts. Obviously these two parts of the judgment, if construed strictly according to their legal import, are mutually inconsistent and the judgment is to this extent ambiguous, for the reason that a defendant cannot be jointly responsible for $17,556.01 with his co-defendants, and at the same time and on the same liability responsible severally in smaller amounts. It is to be remembered that this principal judgment is not rendered against the original principal, i. e., the bank, but jointly against the bondsmen.

■ We are required to determine the legal effect of a revival of this judgment, and in order to do this it becomes necessary to construe the original judgment. We recognize the rule against collateral attack upon a judgment, but this does not preclude us from interpretation and construction. In view of the ambiguity which we have mentioned, it becomes necessary to go back of this judgment to the pleadings and other parts of the record to properly interpret it. This we are privileged to do.

"Where the language of a judgment is ambiguous or its meaning doubtful, reference may be had to the pleadings in the case, and the judgment interpreted in the light which they throw upon it." (34 C. J. 503, sec. 796.)

"In applying a judgment, 'if the language be in any degree uncertain, we may properly refer to the circumstances surrounding the making of the order or judgment, to the condition of the cause in which it was entered.' *Ex parte Ambrose,* 72 Cal. 401, 14 Pac. 35; *Treat* v. *Laforge,* 15 Cal. 41; *Etter* v. *Hughes,* 5 Cal. Unrep. 148, 41 Pac. 790. A judgment 'must be construed with reference to the law regulating the rights of the parties.' " (*Watson v. Lawson,* 166 Cal. 235, 135 Pac. 961.)

The same rules of interpretation apply as in ascertaining the meaning of any other writing. (*In re Ambrose,* 72 Cal. 398, 14 Pac. 33.)

■ This original judgment is based upon liabilities accruing under the two bonds heretofore described, both of which expressly limit the liability of each bondsman, none of whom are responsible for the entire amount of the respective bonds. In the $20,000 bond the first paragraph provides that the makers are bound jointly and severally in the full amount, but this is expressly restricted and defined in the last paragraph, it being entirely clear that the respective bondsmen intended to bind themselves only in the specific amount set out after each name. L. L. Evans assumed a several liability of $11,000 on this bond. The taking of a several depository bond when the total liability exceeds $10,000 is expressly authorized by Sess. Laws

1921, chap. 256, sec. 14, the law then in force. Bonds in this form are construed to impose a several, and not a joint liability. A case in point is *City of Butte v. Cohen,* 9 Mont. 435, 24 Pac. 206, wherein the bond there in issue provided generally that the makers bound themselves jointly and severally to the full amount, and severally in various smaller amounts. The court held:

"We think that this instrument should be construed as binding the sureties severally for that amount expressly stated in the bond as the obligation respectively undertaken. Hence the judgment against any surety should not exceed the amount for which he bound himself, in case of a breach of the condition, and may be enforced up to that amount, against each surety sued, until the judgment is satisfied."

Another case which succinctly expresses the rule is *National Bank of Phoenixville v. Buckwalter,* 214 Pa. 289, 63 Atl. 689:

"The general rule of law is thus stated in 1 Parsons on Contracts, p. 11: 'Whenever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of express joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to produce a several responsibility or a several right.' So that had the writing terminated with the words, 'value received,' being the usual formal language of a promissory note, the presumption of law would have been that the obligation was joint. But when further on it expressly states that, 'it is agreed and distinctly understood that each of the undersigned is to be liable for only one-tenth of the above amount'—$350— these are words of severance and make the responsibility of the signers several and not joint. Consequently they could not be held liable in the present suit, as a verdict and judgment for the full amount, $3,500, against each and all, while the liability of each is distinctly stated to be but one-tenth of that sum. Again, if this were a joint

obligation, and nine of the obligors should become insolvent, the remaining obligor would be responsible for the whole amount, which would be contrary to the agreement."

The same construction has been placed upon a sheriff's indemnity bond. (*Moore v. McSleeper*, 102 Cal. 277, 36 Pac. 593.) The mere accumulation of two or more several liabilities does not create a joint liability. The term "joint" in this connection connotes that each and all are responsible for the entire obligation. "Where two or more make a joint promise, each is liable to the promisee for the *whole* debt or liability; neither is bound by himself, but both of them are bound jointly to the full extent of the promise." (Italics ours.) (13 C. J. 574; sec. 557; *Anderson v. Stayton State Bank*, 82 Or. 357, 159 Pac. 1033.) The $4,000 bond upon its face imposes a several and not a joint liability. It seems that a several bond, where the principal obligation is less than $10,000, was not authorized by the statute aforesaid, and we express no opinion as to the construction of such a bond were it before us in the first instance. However, throughout all proceedings in case No. 1565 both bonds were construed as several, several judgments were entered against the bondsmen, and we are bound by that construction in this case.

We are therefore confronted with a judgment which imposes both a joint liability against all in the total amount due from the principal bank and several liabilities against each surety in varying smaller amounts. In construing and interpreting this judgment, it is at once apparent that effect cannot be given both to the joint judgment and the several judgments. It is our duty to so construe the judgment as to give it effect and validity, and in order to do so we must make that interpretation of it which will harmonize with the facts and the law of the case and be such as ought to have been rendered. (34 C. J. 502, sec. 794.)

Since the judgment is bottomed upon the obligations assumed by the bondsmen, and since such obligations

are several and not joint, it is obvious that the court could not have entered a valid joint judgment against them. It could and did enter several judgments against each of them. It is consonant with reason and these accepted rules of construction to construe the judgment as a several judgment only against the five bondsmen, and to disregard as surplusage that part which imposes a joint liability upon them. The total principal amount found to be due was the principal debt due from the bank, and we construe its inclusion in the judgment as limiting the total liability accruing against the defendants severally. Judgment was not taken against the bank, the only party against whom the total principal judgment could have been imposed, presumably because it was insolvent. The fact that the bondsmen could be joined in one action (C. S., sec. 6650) does not change their liability from several to joint, and the judgment rendered thereon remains as to each several and distinct.

The judgment of revivor dated November 9, 1925, purported to revive *the principal judgment* in the sum of $7,520, and the individual judgment against Evans Brothers Land and Livestock Company in the sum of $5,520, and the individual judgment against H. C. Allen in the sum of $2,000. The several judgment against L. L. Evans was not revived at all, and there is no mention of his name therein except in the preamble relating to the former proceedings. It appears that notice of the motion to revive was served upon the attorney for L. L. Evans and the order recites his appearance.

The sale of June 2, 1927, was based upon execution on this revivor judgment of November 9, 1925. It is true that certain other judgments were described in the execution, but the notice of sale specifies only the revivor judgment and the sheriff's return indicates that the land was sold to satisfy this judgment and none other. Since the separate judgment against L. L. Evans was not revived, his liability under the revivor judgment, if any, must be

included in the revival of the so-called "principal judgment." We have held that this so-called principal judgment, in so far as it purported to bind L. L. Evans and the other defendants jointly, was a nullity and that there was no judgment debtor named in the decree against whom such judgment could be lodged. Therefore a revival of it in any amount would confer no greater dignity upon it than that with which it was first endowed. Since L. L. Evans never was jointly liable with anybody on this principal judgment, and it was a nullity as to him in any joint capacity with the other defendants, it follows inevitably that a revival of this same judgment will not operate to confer any greater or further liability upon L. L. Evans than would the original decree.

The plaintiff in case No. 1565 did proceed to revive the separate judgments against H. C. Allen and Evans Brothers Land and Livestock Company. He did not even attempt to revive the separate judgment against L. L. Evans. If plaintiff in case No. 1565 intended to revive against L. L. Evans, it was incumbent upon him to do so specifically, defining the amount of revival as was done against H. C. Allen and Evans Brothers Land and Livestock Company. As the record now stands, there is absolutely nothing to connect L. L. Evans with the revived judgment and he is not liable thereon.

Although the writ of *scire facias* has been abolished in Idaho (C. S., sec. 7023), its function is served by the provisions of C. S., secs. 6914 and 6939, and the rules applicable to revivor by *scire facias* are likewise generally applicable to revivor under the statute. An action for revivor by *scire facias* is not a new action, but simply a proceeding in aid of execution upon an old judgment. (*Allen* v. *Patterson*, 69 Colo. 302, 194 Pac. 934.) In such an action the whole judgment must be revived in its entirety against all of the several defendants. If a judgment creditor desires to pursue one of several defendants separately, he must do so by suit. (*Allen* v. *Patterson, supra.*) We

believe that these rules apply with equal force to revivors under our statute, and as stated in *Maxwell* v. *Leeson,* 50 W. Va. 361, 88 Am. St. 875, 40 S. E. 420, where the order of revivor contains no "decretal language" against a certain judgment debtor, the only inference which can be drawn from the omission is that of payment and a consequent presumption of discharge and release.

An execution issued without a judgment or decree to support it is void and confers no authority on the officer to whom it is directed (23 C. J. 314, sec. 15), and if there is no judgment as a basis for the execution the purchaser acquires no title. (23 C. J. 756, sec. 803.) The judgment is the sole foundation of the official power to sell and convey property, and if there is no judgment he is without power to sell, and all his acts under an execution issued in such case are without authority and void. (*Hoxter* v. *Poppleton,* 9 Or. 481.) The revivor judgment which is the basis of the sale under which defendants claim title being a nullity as to L. L. Evans, it necessarily follows that the lien thereof did not attach to these lands and the sale thereunder was void. This appellant, as the successor in interest to L. L. Evans, is entitled to maintain this action to relieve his land from the cloud cast upon it by such proceedings. The purchaser at the sale being representative of the original parties in interest, no question of an innocent purchaser is involved.

If any part of the original several judgment in case No. 1565 against L. L. Evans remained unsatisfied after the first sale of this land on December 17, 1924, the unsatisfied portion thereof did not become a lien against L. L. Evans' interest in these premises during the period of redemption by the express provisions of C. S., sec. 6933, which provides:

"The judgment debtor or redemptioner may redeem the property from the purchaser within one year after the sale on paying the purchaser the amount of his purchase with ten per cent thereon in addition, together with the amount

of any assessment or taxes which the purchaser may have paid thereon after the purchase, and interest on such amount; and, *if the purchaser be also a creditor having a prior lien to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest.*"

Appellant having acquired title prior to the expiration of the period of redemption from L. L. Evans, by making redemption from the original sale, took the land free and clear from the lien of the original judgment, under which it had been sold. (*Evans v. Humphrey,* 51 Ida. 268, 5 Pac. (2d) 545.)

The language in the Evans case on this point is, "The title so arising from redemption was not a new title. It was merely the original title of the judgment debtor restored *freed of the* lien for which the property was sold," and is sufficiently broad to include within its purport any deficiency remaining unpaid on that lien.

That exact question has been passed upon by the court of appeals of California in construing a statute identical with C. S., sec. 6933, and from which it was adopted.

"In case of a redemption by the judgment-debtor or the mortgagor, the effect of the sale is extinguished, and the statute declares he is restored to his estate in the land, which then, for the first time, becomes subject to the lien of the unsatisfied portion of the judgment. The lien attaches then because the effect of the sale has been extinguished, and the mortgagor or judgment-debtor is the owner of the estate as though no sale had been made. But if he had conveyed his interest in the land before redemption, and his grantee had redeemed, no interest remained in the mortgagor or judgment-debtor on which the lien could operate, unless it be on the theory that the unsatisfied portion of the judgment was a lien on the land before redemption, and that the grantee of the mortgagor or judgment-debtor took his conveyance subject to that lien—a theory which finds no support in the statute.

"Our conclusion is that when the plaintiff redeemed he took the title free from the pretended lien of the judgment for the deficiency, and that he is entitled to the relief demanded, on the facts stated in the complaint." (*Simpson v. Castle*, 52 Cal. 644, 650.)

The respondent contends that some distinction is to be drawn in applying the rule between a deficiency resulting from a mortgage foreclosure and the unsatisfied portion of an ordinary judgment, but we find no substantial difference between them in this connection. By the express terms of C. S., sec. 6949, sales under judgments of foreclosure of mortgages are "*subject to redemption as in the case of sales under execution.*" Such sales and returns thereof are made in accord with the execution statutes (C. S., secs. 6922–6940 and 6954), and this court has expressly held that there is no difference. "There is no difference under the statutes of Idaho between a sale on execution and one upon an order of sale upon foreclosure of mortgage." (*Cantwell v. McPherson*, 3 Ida. (Hasb.) 321, 29 Pac. 102.)

It therefore appears that this appellant, by virtue of the instruments of conveyance executed by L. L. Evans and his redemption from the original sale in case No. 1565, took a title unburdened by any judgment lien whatsoever arising out of case No. 1565, either on account of the unpaid deficiency due on the original judgment of October 22, 1924, or the revivor judgment of November 9, 1925, even if it were valid as to L. L. Evans. As to the latter, it cannot be contended that a revived judgment is aught else than the original, brought to life and made effective for purposes of lien and execution from the date of revival.

"A valid order of revival of a judgment constitutes an affirmation that the judgment is unpaid, since it amounts to a judicial determination to that effect at the instance of the plaintiff and on notice to the defendant. When a judgment has become dormant because of a lapse of a statutory period of limitation, such as five years, without

an execution, the effect of a revival is to restore it to life, and make it good for another period of five years without the issuance of an execution. It is not a new judgment, but it has been reanimated, restored to activity, and made as effective as ever. But if the lien of a judgment has expired, the revival can only operate prospectively, and not so as to overreach any antecedent alienations or incumbrances." (15 R. C. L. 835, sec. 309. See, also, *Allen v. Patterson, supra.*)

This is implicit in the terms of the statute (C. S., sec. 6939). Neither is the revival fraught with greater dignity than would be the original had it persisted unsatisfied as to the deficiency from the date of the original sale. Since the unpaid portion of the original judgment was not a lien against the land sold under it during the period of redemption, it necessarily follows that a revival of such portion of the deficiency as had in the interim been improvidently satisfied is not a lien, and for this reason also the sale under which respondent claims was void.

The judgment is reversed, with directions to the District Court to enter judgment dismissing the cross-complaint of respondent, quieting title in appellant J. Paul Evans, and making the temporary injunction heretofore issued against the defendant sheriff permanent. Costs are awarded to appellant.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.

Petition for rehearing denied.