(No. 6487.   June 3, 1938.)

PERCY V. JEFFERY, HARRY C. GERRARD, ALEXAN-
DER MITCHELL, Sr., MARY E. MITCHELL,
THOMAS MITCHELL, SANDY MITCHELL, HENRY
McKEVITT, MARY CATHERINE MARTIN and
BRIGID MARTIN, Respondents, v. CLAUSON P.
OULDHOUSE and AL RICHENS, Appellants.

[80 Pac. (2d) 685.]

Otto E. McCutcheon and Arthur W. Holden, for Appellants.

Ralph L. Albaugh and O. A. Johannesen, for Respondents.

AILSHIE, J.— This is an appeal by Clauson P. Ouldhouse and Al Richens from a decree adjudicating the rights and priorities of the respective parties to water appropriations from what is known as Spring Lake in Jefferson county. Respondents, Jeffery and Gerrard, deraigned their title from Thomas A. Wagoner who was the original locator of the water right from which respondents obtain their water supply. It was contended by appellants in the lower court and is urged here, that respondents were estopped to urge their claim in this action, by reason of a judgment entered in the United States District Court for the District of Idaho in 1930, in the case of *Ernest Sauve v. W. H. Abbott et al.* Appellants contend, and correctly so, that Jeffery and Gerrard, having deraigned their title from Wagoner, are in privity of title with him; and that if he was bound by the decree in the Sauve-Abbott case, respondents were equally bound

by it. (*Schuler v. Ford*, 10 Ida. 739, 80 Pac. 219, 109 Am. St. 233, 3 Ann. Cas. 336; *Smith v. Kessler*, 22 Ida. 589, 593, 127 Pac. 172; *Carver v. Ketchum*, 53 Ida. 595, 599, 26 Pac. (2d) 139.)

Wagoner was made a defendant in the United States District Court for the District of Idaho in the case of *Sauve v. Abbott et al.*, and he answered in that case with certain admissions and denials, then filed a cross-complaint, setting up his ownership in the land here involved and also alleging that on the 11th of July, 1914, he made application to the commissioner of reclamation of the state of Idaho for authority to appropriate and divert "from what is known as Mud Lake, 5.32 second feet of the waters of said Lake," for irrigation and domestic purposes. That the application was approved, permit issued dating from July 11, 1914; and that thereafter and on about the second of January, 1923, the commissioner issued a license and certificate of water right to Wagoner for "the use of 5.32 cubic feet per second of the waters of Mud Lake"; and then prayed for a decree establishing his right to the quantity of water covered by his permit, with a priority dating from July 11, 1914. It appears that thereafter, and during the pendency of that case, upon motion of counsel for plaintiff, the action was dismissed as to Wagoner. Although the findings and decree of the United States District Court are not before us in full, there was introduced a certified copy of a portion of the decree which reads as follows:

"That this action be, and is dismissed as against Thomas Waggoner. That the waters used by Thomas Waggoner are not tributary to, nor a part of Mud Lake."

The certificate of the United States District Court clerk certifies the foregoing "to be a full, true and correct copy of a portion of the decree filed and entered in the above entitled case in my office on the 1st day of November, 1930, pertaining to Thomas Waggoner."

While this entry and recital in the decree only specifies the *action against Wagoner* as being dismissed, it seems probable, or is at least presumable, that it was intended to cover not only the plaintiff's action against Wagoner but

also Wagoner's cross-complaint; and so far as the record discloses, it appears that all the parties to the federal court action treated the dismissal of Wagoner, as a defendant, as also a dismissal of his cross-complaint as well; and no further proceedings appear to have been taken on his cross-complaint. It is true that dismissal of a plaintiff's cause of action does not carry with it a dismissal of an action based on a cross-complaint. (*Brown v. T. B. Reed & Co.*, 31 Ida. 529, 174 Pac. 136; *Savage v. Stokes*, 54 Ida. 109, 28 Pac. (2d) 900.) On the other hand, as to whether, after the dismissal by plaintiffs of their cause of action against one of the defendants, such defendant may abandon his cause of cross-complaint. without further action or proceeding, we express no opinion; but it seems clear that he might voluntarily dismiss such cross-complaint, at any time before any pleading filed by his adversary praying affirmative relief. (Sec. 7–705, I. C. A.; *Molen v. Denning & Clark L. Co.*, 56 Ida. 57, 50 Pac. (2d) 9.)

The fact that the decree adjudges or recites (according to the construction that may be given it), "that the waters used by Waggoner are not tributary to, nor a part of Mud Lake," makes it clear that, as the matter then stood, the Wagoner appropriation or water right was thought to have its source from some other body of water or stream separate from and independent of Mud Lake. With this evident understanding of the facts and the law, it was concluded in the Sauve-Abbott case, that Wagoner's claim or water appropriation from some other source should not be considered and litigated in a suit involving the waters of Mud Lake.

Confusion has arisen out of the fact that the litigation here involves waters of "Spring Lake"; and the litigation in the Sauve-Abbott case concerned the waters of "Mud Lake," and Wagoner's appropriation and water permit was from *Mud Lake;* while on the other hand, his successors in interest are here claiming their appropriations from Spring Lake. This confusion of names appears to be due to the fact that originally a series of adjacent or near-by lakes or ponds were all known and referred to as Mud Lake at the time settlers began to make water appropriations in that section of the country. Later on it was found that what is now

known as Spring Lake is somewhat higher in elevation than the lower lake, generally known as Mud Lake, and that the only connection between them was by overflow of the upper lake (Spring Lake) and possibly subterranean percolation. Wagoner explained this in his testimony as follows:

"In Nineteen fourteen I made a filing, filed my homestead, and made a filing in what is Mud Lake proper. At that time I never heard of Spring Lake; it was all considered Mud Lake; it was a long arm in a northwesterly direction from Mud Lake; and there is a body of water that we call the John Hansen and Charley Nordstrom pond, which is just a depression in the country, and there is what is called the Jefferson Reservoir, but wasn't at that time. Another depression, sort of a lake, on farther, was what they later termed Spring Lake. I didn't know at the time I filed, I didn't know there was such a thing as Spring Lake. In Nineteen sixteen we found that the water in Spring Lake was higher than it was in Jefferson and John Hansen Lake, as it subbed on down to Mud Lake; and in order to get the higher water we changed our point of diversion from a point on Mud Lake proper to what we thought was a point on Mud Lake farther north; and it was later, in Nineteen fifteen, was the first time I ever heard the term 'Spring Lake'."

In the light of this state of the record and these facts, it would be a violation of established rules, as to the scope and binding force of judicial decrees, to hold that Wagoner and his grantees are bound by a water decree establishing rights and priorities to a water supply in a case from which he was dismissed and excluded and his rights were not thought to be in litigation. The facts of this case do not bring it within the rule of *res judicata* as heretofore stated by this court. (*Elliott v. Porter*, 6 Ida. 684, 59 Pac. 360; *Joyce v. Murphy Land etc. Co.*, 35 Ida. 549, 208 Pac. 241; *South Boise Water Co. v. McDonald*, 50 Ida. 409, 296 Pac. 591; *Village of Heyburn v. Security Sav. & Trust Co.*, 55 Ida. 732, 738, 49 Pac. (2d) 258.)

Appellants complain of certain findings and judgment thereon and say:

"Under said finding of the court, the effect thereof is to require that the surface level of Spring Lake be maintained at a certain elevation, in order to enable the plaintiffs to divert water therefrom into their said ditches, regardless of the quantity of water in said lake";
and then further argue:

"An appropriation of a certain elevation of water in stream or lake to enable the user to divert his water, is not permitted in this state. There is no such thing as an appropriation of an elevation.",
and cite *Schodde v. Twin Falls Land & Water Co.,* 161 Fed. 43, 56 L. ed. 686, 692.

We do not understand the decree herein to either intend or have the effect which appellants seem to give it. The part of the decree against which this complaint is lodged, reads as follows:

"It is further ordered, adjudged and decreed that the defendant Clauson P. Ouldhouse shall immediately, at his own cost and expense, construct and place in a workmanlike manner a good and sufficient headgate in said Ouldhouse ditch at a point near its intersection with the south boundary line of Section 6, Township 7 North, Range 34 E. B. M., so that the water from Spring Lake flowing through said headgate may be properly measured, regulated and controlled and waste of said water prevented."

We understand this decree, based on findings supporting it, is intended to conserve the water and protect prior appropriators against waste or wrongful diversion of the waters of Spring Lake. (*Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752.)

Error is assigned on the action of the court, at the conclusion of plaintiffs' testimony, in allowing the plaintiffs to strike paragraph VII from their second amended complaint, in order to conform to the proofs. It is asserted that the court abused its discretion in allowing the amendment. We fail to find anything prejudicial to appellants in the action of the court in this respect. The statute, sec. 5–905, I. C. A., grants to the court a wide discretion in the matter of

allowing amendments, and this court has been very liberal in its construction of the statute and in sustaining the rulings of the trial courts in allowing amendments. (*Rankin v. Caldwell*, 15 Ida. 625, 633, 99 Pac. 108; *Sweeney v. Johnson*, 23 Ida. 530, 535, 130 Pac. 997; *Trask v. Boise King Placers Co.*, 26 Ida. 290, 142 Pac. 1073; *The Mode, Ltd., v. Myers*, 30 Ida. 159, 164 Pac. 91.)

The foregoing are the principal specifications of error relied on, except those directed at the sufficiency of the evidence to support the material findings. Appellants' brief contains twenty-two printed pages of specifications of error. Aside from those already considered, a detailed discussion of the other specifications would not settle any legal question of future interest in litigation and would simply encumber the reports without any compensating value. Suffice it to say, that the remaining assignments of error deal with rulings on the admission and rejection of evidence and the sufficiency of the evidence to support various findings. After perusal of the briefs and two volumes of typewritten record, we have concluded that the rulings of the court, in the admission and rejection of evidence, were substantially correct and that there is sufficient evidence in the record to sustain the various findings of the trial court; and that no prejudicial error has been committed against appellants.

■ Appellants also appeal from an order made after judgment denying a motion to tax costs, or as designated by the parties, "retax." (Sec. 12–113, I. C. A.) The record contains no certificate identifying the affidavits, papers or files used on the hearing of the motion, as required by sec. 11–213, I. C. A. (See *Feenaughty Machinery Co. v. Turner*, 44 Ida. 363, 257 Pac. 38.) There is no cost bill in the record and no affidavit supporting the cost bill or opposing the affidavit made on motion to have the court tax the costs. Under these circumstances, we are not at liberty to review the order. (See *Griffiths v. Montandon*, 4 Ida. 329, 39 Pac. 195; *Feenaughty Machinery Co. v. Turner, supra.*) Appeal from order denying motion to tax costs is dismissed.

The judgment will be affirmed, and it is so ordered.  ·Costs to respondents.

Morgan, Budge and Givens, JJ., concur.

Holden, C. J., deeming himself disqualified, did not sit at the hearing or participate in the decision.

Petition for rehearing denied.