249 P.2d 919

HAENER et al. v. ALBRO et al.

No. 7831.

Supreme Court of Idaho.

On Rehearing Nov. 6, 1952.

Carver, McClenahan & Greenfield, Boise, for appellants.

Clements & Clements, Lewiston, for respondents.

GIVENS, Chief Justice.

February 26, 1948, respondents, by written agreement, sold to the Camas Lumber Company (which later sold and assigned its rights in said agreement to appellants) all the merchantable standing timber which was accessible, located on described real property on what is colloquially known as Joseph Plains, for $2.50 per thousand-feet log scale for all logs removed; to be paid $150 cash, receipt of which was acknowledged, balance upon a 1,000-foot log scale for all logs removed each month, paid by the tenth of the following month, one-half of the total purchase price to be paid any time after three years from the date of this agreement upon ten days' written demand by respondents, balance five years from the date of the agreement, or at the time the timber be cut and removed, if prior to five years; the balance due (i. e., evidently on standing timber, not logs) to be determined on a timber cruise basis and all cruises to be made by a certified cruiser or one agreed upon.

The purchasers further agreed to start construction of a main road to reach the timber described, within twelve months of the date of the agreement and complete construction thereof within two years; purchasers were to remove all timber within a fifteen-year period. Respondents granted purchasers the right to construct access roads for logging purposes, agreeing to give no right-of-way across their land to others during the life of the agreement.

August 12, 1950, appellants notified respondents in writing they would begin to construct logging roads and cut timber on their place August 14 or 15.

August 29, 1950, respondents served notice on the purchasers and their assignees and the Reconstruction Finance Corporation of cancellation and rescission of contract for failure to start, within twelve months of the date of the contract, construction of a main road to reach the timber, and to complete it within two years; asserted false and fraudulent representations as to the location and character of the road to be built; the reasonable market and potential value of the timber, known by the purchasers to be false and relied upon by the sellers to their alleged irreparable damage; that the purchasers had no intentions of performing their contract, tendered the $150 down payment, and notified the purchasers not to enter upon respondents' premises or attempt to log or remove any timber thereon.

Suit for specific performance of the agreement was commenced by appellants, assignees of purchasers, September 20, 1950, and an amended complaint was filed

November 1, 1950. The latter alleged in substance the making of the contract, assignment thereof, commencement of the construction of the road in the month of October, 1947; expenditure by the original purchasers thereon in excess of $45,000; completion of the road February 19, 1950, and an expenditure by the present appellants in excess of $20,000 on the road; acknowledged receipt of the notice given by respondents of August 29, 1950, and that the statements contained therein were false and without foundation and fact; that they were made maliciously to avoid the contract of sale in order to sell the timber to other purchasers at a higher price; and alleged appellants' readiness, willingness, and ability to perform all covenants and agreements of the contract set forth in Paragraph IV of the amended complaint, which contained a copy of the contract for the purchase of the timber and assignment thereof to the Prairie Land and Timber Company, and asked for a decree requiring respondents to specifically perform the contract according to its terms, and general relief.

Respondents' answer and cross-complaint admitted the making of the contract, service of notice of cancellation and rescission; otherwise, denied the allegations of the amended complaint, and by cross-complaint alleged that at the date of the agreement respondents owned approximately 3,-000,000 feet of merchantable timber of the reasonable market value of $6 per thousand board feet; that respondents and other residents of Joseph Plains had suffered financial loss and inconvenience from the lack of a main or arterial road and had sought the construction thereof from the United States and State Highway Departments and Highway Districts; that respondents were without any experience as to logging or the value of standing timber; that the purchasers and their officers falsely and fraudulently represented to respondents to induce them to enter into the contract; that they, the purchasers—

"* * * were contracting for the majority of the merchantable timber standing in the Joseph Plains territory and would begin to log the same and manufacture it into lumber at Grangeville, Idaho, upon the completion of the construction of an all-weather two-lane highway or road from the Salmon River to the cross-plaintiffs' premises and surrounding territory, which highway or road would be located and of sufficient width, alignment, grade, surface structure and condition to adequately and safely transport all logs, livestock and products logged, manufactured and produced from the Joseph Plains, and the goods to be consumed therein, and the machinery and equipment to be used therein throughout the year, and to particularly meet the transportation needs and convenience of the cross-plaintiffs. That at the said time and place, the aforesaid further

represented that they would begin the construction of said road within twelve months of the date of any contract executed by the cross-plaintiffs, and that it would be completed and available for their use within two years thereafter. That the aforesaid V. E. Park and Laurence N. Smith, (officer and attorney for purchasers) and at said time and place, also falsely represented to the cross-plaintiffs for the purpose of inducing them to enter into a contract with the Camas Lumber Company for the sale of their standing timber, that the same was valueless on account of the roads and transportation facilities then existing, and would continue to be so until a road such as they had described and represented would be built by them. That at said time and place the said Camas Lumber Company and the aforesaid V. E. Park and Laurence N. Smith knew that the cross-plaintiffs' standing timber was of the reasonable minimum market value as it then stood upon the premises of $6.00 per thousand board feet.

"VII.

"That all of the aforesaid promises and representations made by the cross-defendant, Camas Lumber Company, by and through its agents, servants, attorneys and employees as hereinabove set forth in Paragraph VI in regard to the location, character, construction and availability of said road, were made with the false and fraudulent intent not to fulfill the same, but were made for the purpose of inducing the cross-plaintiffs to execute the contract hereinafter mentioned, and the cross-plaintiffs, in so doing, did rely upon the said representations of the said V. E. Park and Laurence N. Smith, and believed them to be true, and by reason thereof entered into an entire, inseparable and indivisible contract with the Camas Lumber Company, dated the 26th day of February, 1948, for the sale of all the merchantable timber standing upon their premises which the owners specified to be removed by the purchasers, a copy of which agreement is in the words and figures as set forth in Paragraph IV of plaintiffs' amended complaint, which is hereby referred to and by reference made a part hereof. * *

"X.

"That on the 17th day of August, 1950, the cross-plaintiffs, as soon as they had ascertained that said promises and representations of the Camas Lumber Company as hereinabove set forth were untrue and were never intended to be kept when made, and that said road was not constructed as contracted for, tendered the cross-defendant, Prairie Lumber Company, as alleged assignee of Camas Lumber Company, the sum of $150.00 in United

States currency, the amount paid them on the date of the execution of the contract by Camas Lumber Company to apply upon the first logs cut according to the terms of the contract, and at said time and place advised them, as they had previously done, that said contract was cancelled, annulled, voided and rescinded and notified them not to enter upon the said land or cut or attempt to cut and remove any logs or timber therefrom. * * *." refusal of appellants to accept the tender, deposit thereof in a Bank; that the promises and representations made by the purchasers were made in bad faith to induce respondents to sell their timber at a grossly inadequate price; that they believed the statements and would not have entered into the contract but for such false and fraudulent statements; and asked for a decree cancelling, annulling, voiding, and rescinding the contract.

Appellants' answer to the cross-complaint specifically denied the allegations of Paragraph X thereof, which alleged that on August 17, 1950, cross-complainants *"as soon as* they had ascertained that said promises and representations of the Camas Lumber Company * * * were untrue and were never intended to be kept when made, * * *."* (Emphasis added.)

The court found false representations had been made; that the appellants and their assigns had wholly *failed to* perform the terms and conditions of their contract with regard to the construction of a road, but "that they only constructed one and one-half to two miles of new road, commonly referred to and found to be the 'Rooke cut-off', of the 18.8 miles from the Rice Creek bridge, which is found to be the starting point of the 'main road' contemplated, and did realign and widen an existing public road for approximately three miles and made some other improvements thereto over a distance of another six miles * * *." That the purchasers or their assigns have not "even spent one-half of any such sum ($100,000.00, testified as to the sum the purchasers prospectively considered spending) for the construction of said 'main road' and no attempt whatsoever has been made on the part of the Camas Lumber Company or any of its assigns to construct a new bridge across the Salmon River." (The contract did not provide for the construction of any bridge.) That the notice of cancellation was given and tender of $150 offered and refused, and concluded that appellants had not performed, or substantially performed, the contract and their performance did not present the fairness, certainty and completeness required for specific performance; that the contact (as to the sale of timber and construction of the road) is entire and not severable; that the respondents were persuaded to execute the contract by the false and fraudulent representations of the officers and agents of plaintiffs, and held the contract null and void and decreed it

should be cancelled, annulled, voided and rescinded. The appeal is from that decree.

Respondents, by their notice of cancellation and rescission, though not then in court, sought an equitable remedy. They then had their choice of remedies; either cancellation and rescission, or damages. Breshears v. Callender, 23 Idaho 348, at page 354, 131 P. 15. They chose the former. Respondents, by their suit for specific performance, likewise sought equity. The answer and cross-complaint joined issue on this theory and both parties tried the case below as in equity.

■ Where rescission of a contract is sought because of false and fraudulent statements inducing the making thereof, in addition to proving the false and fraudulent statements as material, and reliance thereon, the parties seeking rescission must prove they acted promptly upon ascertaining the falseness of the alleged statements and must place or offer to place the other party in status quo. Breshears v. Callender, supra; Weber v. Pend D'Oreille Mining, etc., Co., 35 Idaho 1, 203 P. 891; MacLeod v. Stelle, 43 Idaho 64, 249 P. 254; Weeter v. Reynolds, 48 Idaho 611, 284 P. 257.

While the answer and cross-complaint alleged that August 17, 1950, as soon as respondents had learned the falsity of the alleged representations, they gave notice of rescission, there is absolutely no evidence in the record as to when they ascertained the alleged statements as to the value of the timber or the prices being paid for timber by appellants were false and untrue. The above authorities hold that the parties who claim to have been defrauded must act promptly upon ascertaining the falsity of the inducements. These points are both assigned as error under Assignment of Error No. 10, challenging the court's refusal to grant appellants' motion for dismissal of respondents' cross-complaint, these grounds being specifically urged in their motion:

"The Cross-defendants further pray for the dismissal of the Cross-complaint insofar as it prays for the contract to be delivered up, cancelled and rescinded, for the reason that the proof adduced by the Cross-complainants affirmatively shows: First, that the Cross-complainants have failed to do equity, in that they have slept on their rights, if any, by standing by for a long period of time after they conceived themselves to be entitled to cancellation, and knowingly permitted the Cross-defendants to go to more expense and improve the road, the benefits of which improvements the Cross-complainants have accepted.

"Second. That the Cross-complainants have failed to do equity in that they have failed to tender to the Cross-defendants the value of the benefit

of any use of the said road by the Cross-complainants."

■ The portion of the decree authorizing rescission because of representations as to price if false or fraudulent, is not, therefore, sustainable.

Respondents claim they did not know appellants were not going to construct and complete the main road, which they had contracted to build, until August 15 or 16, 1950, whereupon, respondents served their notice of cancellation.

■ While the trial court found appellants, at the inception of the contract, had no intentions of building a main road as they agreed to do, the evidence is insufficient to sustain this finding. However, the evidence, though conflicting, is sufficient to sustain the finding appellants did not build or complete a main road as agreed upon within the time agreed upon, or at all.

Appellants' evidence was to the effect they paid Vanderwall, the contractor who was employed to work on the road, $31,066.42, $4,560 for a right-of-way on the Rooke cut-off, and $1,290.01 to two additional employees working on the Rice Creek road and the Rooke cut-off; and Ketcham, president of one of the purchaser's assignees, testified they had subsequently expended in excess of $10,000 on the road, or a total of $47,006.43. This evidence was not contradicted, and the above finding is not inconsistent therewith

nor to the contrary. Nobach v. Scott, 20 Idaho 558, at page 564, 119 P. 295.

While argued these expenditures were in part for a road used, not only to reach respondents' timber, but also other timber and, therefore, respondents would not be required to place the appellants in status quo as to this full amount, it is palpable there is some portion of this expenditure chargeable to respondents, and there has been no tender or offer to place appellants in status quo relative thereto.

■ Respondents did not show any injury because of the delay in what they contend should have been or be the proper construction of the road and, therefore, cancellation because of failure to completely build the road within two years was not justified. Castleberry v. Hay, 8 Idaho 670, 70 P. 1055; Sullivan v. Burcaw, 35 Idaho 755, 208 P. 841; Reid v. Mix, 63 Kan. 745, 66 P. 1021, 55 L.R.A. 706; Walker v. Harbor Business Blocks Co., 181 Cal. 773, 186 P. 356; Green Mountain Falls Town & Improvement Co. v. Boyes, 22 Colo. 225, 43 P. 1036; Morgan v. Thompson, 46 N.M. 282, 127 P.2d 1037; Canepa v. Durham, 62 Nev. 417, 153 P.2d 899, 155 P.2d 788, 1009; Cracchiolo v. Carlucci, 62 Ariz. 284, 157 P.2d 352; Johnson v. Meiers, 118 Mont. 258, 164 P.2d 1012; Loveland v. Aymett's Auto Arcade, 121 Conn. 231, 184 A. 376; Barry v. Frankini, 287 Mass. 196, 191 N.E. 651 (3, 4) on page 653, 93 A.L.R. 1240; Trustees of Freeholders & Commonalty of the Town of

Brookhaven v. Strong, Sup., 26 N.Y.S.2d 977; United Cigar Stores Co. of America v. Hollister, 185 Minn. 534, 242 N.W. 3; Andrew v. American Savings Bank & Trust Co. of Davenport, 219 Iowa 921, 258 N.W. 911; Klapka v. Shrauger, 135 Neb. 354, 281 N.W. 612; Abbate v. Shelden Land Co., 303 Mich. 657, 7 N.W.2d 97; Latham v. Butler, Tex.Civ.App., 17 S.W.2d 1083; In re Waterson, Berlin & Snyder Co., 2 Cir., 48 F.2d 704.

On the one hand it is argued the portion of the agreement as to the road is too uncertain to support specific performance, and on the other hand, it is contended this provision was the most important part of the agreement and it was only because appellants agreed to build a main road that respondents agreed to sell their timber at $2.50 per thousand.

 The contract was prepared by appellants and, therefore, they may not complain that defects therein be charged to them, City of Bremerton v. Bremerton Water & Power Co., 88 Wash. 362, 153 P. 372, at page 376(9), and in their amended complaint specifically offered to perform any unfinished obligations under the contract. Conceding the words "main road" need definition, does not mean the contract may not be interpreted or enforced, but only that extrinsic evidence is admissible to prove what was meant by the words. Williams v. Idaho Potato Starch Company, 73 Idaho 13, 245 P.2d 1045; Morgan v. Firestone Tire & Rubber Co., 68 Idaho

506, 201 P.2d 976. Evidence relative to the meaning of this provision was introduced by respondents and cross-examination of appellants' witnesses, and is sufficient to justify the finding of the trial court that appellants were obligated to build a road "of good surface, grade, and drainage and having sufficient width together with proper horizontal and vertical alignment so that two farm trucks could safely pass at any point upon said road throughout the year." (Depending upon weather conditions, as appellants are not required to maintain or keep the road open.)

 Appellants, having sought specific performance in equity, must be required to do equity. Williams v. City of Emmett, 51 Idaho 500, at page 508, 6 P.2d 475. In view of the findings of the court and in order to evenly balance the scales between appellants and respondents—even though the contract did not make time, as to the completion of the road, the essence thereof—it is inequitable to continue in force the contract of sale in favor of appellants without requiring them, as a condition precedent, to comply with the terms thereof obligatory on them; namely, the completion of the road which the court found they agreed to construct.

"* * * 'Equity having obtained jurisdiction of subject matter of a dispute, will retain it for the settlement of all controversy between the parties with respect thereto.' Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080,

1083, and cases there cited. It is also the rule in this state (except in default cases) that the court will grant all proper relief consistent with the case made and embraced within the issues, whether the particular relief be prayed for or not. (Citing other cases.)" Anderson v. Whipple, 71 Idaho 112, at page 122, 227 P.2d 351, at page 357.

This being an action in equity, the court should and may require the parties to do equity and undoubtedly has the authority to adjudicate every issue involved and may impose such terms as seem to it equitable and proper. Farmers' Land & Irrigation Co. v. Johnson, 39 Idaho 255, at page 259, 228 P. 311.

Enforcement of a contract must encompass mutual obligations and remedies as to both parties. Moody v. Crane, 34 Idaho 103, at page 120, 199 P. 652.

Appellants ask full performance by respondents. By the same token, respondents are in equity entitled to full performance by appellants of all their obligations. Doty v. Barnard, 92 Tex. 104, 47 S.W. 712. Whether the agreement to build a main road was a dependent or an independent covenant, the statement paraphrased below is pertinent and the thought contained therein controlling:

"* * * a party asking equity (appellants seeking specific performance) must first do equity, and a court of conscience would not permit her to appropriate said material (appellants to acquire the timber) without paying for it, (pay the price and complete the road) which the record shows she has not done. (Appellants have not completed the road as agreed upon.) * * *." Fales v. Weeter Lumber Co., Ltd., 26 Idaho 367, at page 371, 143 P. 526, 527.

The decree is, therefore, *reversed* and confined to the issues in this action, modified as follows:

Appellants will be entitled to a decree of specific performance for the sale of the timber as contracted; provided, appellants, by November 1, 1953, construct a main road to respondents' land of the nature, kind and character the trial court found they agreed to build. Appellants may not start cutting or removing timber from respondents' land until the road is completed and so determined by the trial court. 58 C.J. 1264, #615.

Otherwise, the contract will be cancelled.

Each party will pay their own costs.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.