354 P.2d 516 ·

**FORT HALL INDIAN STOCKMEN'S AS-
SOCIATION, INC., Plaintiff-Appellant,**

v.

**Joseph THORPE, Jr., Defendant-Respondent.**

No. 8838.

Supreme Court of Idaho.

June 22, 1960.

Rehearing Denied Aug. 4, 1960.

Anderson & Beebe, Blackfoot, for appellant.

Hugh C. Maguire, Ralph H. Jones, Pocatello, for respondent.

KNUDSON, Justice.

Appellant, Fort Hall Indian Stockmen's Association, Inc., (hereinafter referred to as Association) is an incorporated nonprofit cooperative association, organized and existing under the provisions of I.C. Tit. 22, Ch. 26. The principal purposes of the Association are to provide for its members grazing facilities, range rights, range and feeding management, bulls for breeding services, · herders and riders. For the purpose of acquiring funds with which to pay the expenses of providing such services for its members an annual assessment is made against each member in proportion with the business done with each member by the Association. Each member is assessed according to the number of cattle he has grazing upon the area controlled by the Association.

Respondent had been a member of said Association in good standing for more than ten years prior to his voluntary withdrawal on May 20, 1957. He had paid all assess-

ments levied up to and including the year, 1955. On March 13, 1956, the Association levied an assessment against its members on the basis of $7.25 per head of cattle sharing the facilities and receiving the services provided by the Association during 1956. During the season of 1956 the Association furnished its services to 928 head of cattle owned by respondent.

Respondent refused to pay said assessment levied on March 13, 1956, and appellant commenced this action to recover said assessment amounting to $6,728 and interest. The district court, sitting without a jury, found that although respondent is indebted to appellant for said assessment respondent is entitled to a credit or offset in the sum of $6,331 and entered judgment in favor of appellant and against respondent in the sum of $397. This appeal is from said judgment.

Other facts essential to an understanding of the contentions of the respective parties are that one of the expense items payable annually by the Association is the fee it must pay to the Bureau of Indian Affairs (hereinafter referred to as Agency) for a grazing permit relative to several thousand acres of land managed and controlled by said Agency.

Prior to 1956 the Association had paid the annual grazing fee during November or December of each year following the annual fall cattle sale which was sponsored by the Association for the benefit of its members. As a result of negotiations between the Agency and the Association a plan was adopted by the Association to create a fund whereby it could pay the grazing fees annually in advance and thereby conform to regulation requirements of the Agency. The exact date of the adoption of such plan is not definitely disclosed by the record, however it is clear that the plan was to be followed from 1951 to 1955, both inclusive, with a view of accumulating during said period sufficient funds so that the grazing fees payable in 1956 could be paid early in that year as per Agency regulations. Respondent contends that the specific purpose of the plan was to create a fund with which to pay the 1956 grazing fees in advance. He further contends that during said period and pursuant to said plan the annual assessments levied by the Association were in excess of what was necessary to defray its annual operating expenses and that a fund was accumulated with which the 1956 grazing fee amounting to $20,100.25 was in fact paid in advance on April 3, 1956. He further contends that by reason of having contributed his pro-rata share to said fund he is not further indebted to the Association and that the assessment here sought to be collected has been levied for the purpose of obtaining funds with which to pay the operating ex-

penses of the Association for the year, 1957, and not for the year, 1956.

Appellant's assignments of error challenge, in a number of particulars, the sufficiency of the evidence to sustain the findings and conclusions of the trial court. Although not all of the assignments are discussed in appellant's brief, we have examined the record as to each of them and we shall here discuss the assignments, which according to appellant's brief are most significant.

█ Appellant contends that the evidence does not support the finding by the trial court that during the period from 1951 to 1955 each member was assessed an amount in excess of appellant's annual operating expense and that by 1956 sufficient monies had been accumulated in a reserve fund for the purpose of prepaying the 1956 grazing fee.

The evidence clearly shows that prior to April 10, 1953, the monies and accounts of the Association were handled by the Agency. The superintendent of the Agency testified that the records of his office show that the sum of $933.50 was credited to the Association's grazing fee sinking fund for the year 1951 and that the sum of $5,193.20 was likewise credited to said fund for the year, 1952. On April 10, 1953, the money in the depository of the Agency belonging to the Association amounting to $6,127.50 was transferred to the Association and from that time on the Association handled its monies and accounts.

Under the terms of the grazing permit issued through the Agency to the Association covering the years from 1951 to 1955, both inclusive, it is provided as follows:

"This permit is issued with the understanding that the annual collections shown on the schedule on page 1 of the permit will be credited as follows:

|      | Credit to Permittee Association as a Grazing fee Sinking Fund |
|------|------|
| 1951 | $933.50 |
| 1952 | 5,193.20 |
| 1953 | 5,852.44 |
| 1954 | 5,852.44 |
| 1955 | 5,852.44 |
|      | 23,684.02" |

Although said last mentioned evidence does not prove that a particular sum of money was in fact accumulated by the Association as a grazing fee sinking fund, it does show that the Association was obligated by contract to create such a fund. Also supporting such finding is the evidence disclosing that during each of the years 1953, 1954 and 1955, the Association budgeted grazing fees substantially in excess of the actual cost thereof and that the annual assessments were made based on the budgets. The following tabulation discloses the amount

budgeted for the grazing fee, and the grazing fee actually charged each of the three years referred to, to-wit:

| Year | Grazing Fees Budgeted | Grazing fees actually charged | Excess |
|------|------|------|------|
| 1953 | $24,367.00 | $18,514.00 | $5,853.00 |
| 1954 | 25,355.00 | 19,404.37 | 5,950.63 |
| 1955 | 23,758.76 | 17,860.26 | 5,890.50 |

The record does not disclose the exact amount of excess collected each year but it is clear that on February 29, 1956, the Association had accumulated cash in the bank in the amount of $40,236.36. The record is also clear that on April 4, 1956, the Association paid in advance the 1956 grazing fee amounting to $20,100.25.

Respondent who had been a member of long standing in the Association and had also served as a director was asked if he knew of his own knowledge from attending meetings, discussions with members of the Board of Directors and his participation as a member what the purpose of the Association was in levying an assessment in excess of the anticipated annual expenses and he testified that the purpose was to accumulate money with which to pay the herd and grazing fee in 1956. Notwithstanding the fact that the Association has nine directors not one was called to contradict such testimony. In this connection respondent is also corroborated by the testimony of the superintendent of the Agency, Mr. Owl.

Appellant contends that the Association could not, at the time the 1956 grazing fees were paid, make a distribution on a patronage basis for the reasons that "there was no evidence that plaintiff was solvent, that it had sufficient assets to defray all expenses for the following year's operations." The By-laws of the Association provide that any funds accumulated by the Association may be used by its directors:

"d. For distribution on a patronage basis, provided that such distribution shall not be made if it shall make the Association insolvent, and no distribution shall be made in any year until the Association has accumulated a reserve sufficient to pay the expenses of the following year's operations, including the purchase of needed bulls."

Appellant's said contention is without merit. The balance sheets of the Association's records disclose that its net worth for the fiscal year ending February 28, 1956, was $68,-424.08. Its records also show that as of February 29, 1956, it had cash in the bank amounting to $40,236.36, and that its budgeted expense for 1956, including the purchase of needed bulls, amounted to only $33,002.61.

Appellant assigns as error paragraph VIII of the trial court's findings of fact, which is as follows:

"The Directors, by a letter dated March 21, 1957, signed by the Secretary

of the plaintiff, stated that the 1956 fees, as assessed, were to be used by the Association to pay the landowners in advance for the 1957 grazing season. That the defendant did not receive any of the benefits of said Association for the year 1957."

Appellant contends that the court erred in finding that the letter referred to in said finding constitutes action by the Board of Directors. Such contention is also without merit. The letter referred to is identified as defendant's exhibit No. 6, being a letter written on the Association stationery, addressed to respondent, dated March 21, 1957 and signed by Nettie Lee Houtz, Secy-Treas. The pertinent portion of the letter is as follows:

"The statement in our letter of January 23, 1957 that your herd and range fees for 1956 were delinquent was in error. Fees to be paid will be based on a cattle count to be made by the representatives of the Fort Hall Indian Stockmen's Association. The 1956 fees will be used to pay the land owners in advance for 1957 grazing season."

The testimony of Mrs. Houtz disclosing the authorization for the letter is as follows:

"(At this time Defendant's Exhibit No. 6, so marked 'Admitted in Evidence', by Reporter)

"Q. (Mr. Maguire, continuing) Mrs. Houtz, I will ask you if that letter was not written following a meeting with the Board of Directors of the Fort Hall Indian Stockmen's Association, which was in March, nineteen, fifty-seven, which was called for the purpose of discussing Mr. Thorpe's indebtedness, if any, to the Association, and it was determined at that meeting that Mr. Thorpe owed no monies to the Association and that letter was written to Mr. Thorpe confirming that fact?

"Mr. Anderson: We renew our objection, Your Honor.

"Judge Martin: She may answer.

"A. At the time this letter was written, there was a Board of Directors meeting authorizing me to write such a letter to Mr. Thorpe.

"Mr. Maguire: Your answer then is 'yes'?

"A. Yes."

The trial court found that respondent was liable for his pro-rata share of the 1956 assessment amounting to $6,728, but that respondent was entitled to a credit or offset in the amount of $6,331. Appellant challenges the court's action in allowing such credit or offset. In our examination of the record to ascertain the reason for such allowance and the basis for computing the amount thereof, we find that the trial court was convinced that during the five

years preceding 1956 each member had been assessed, and by him paid, an amount in excess of the actual operating expenses of the Association; that such excess had been accumulated for the specific purpose of paying the 1956 grazing fee in advance; that an amount at least equal to the 1956 grazing fee ($20,100.25) had in fact been so accumulated and used by the Association for said purpose. In computing the amount for which respondent was entitled to credit the trial court ascertained from the evidence that respondent's cattle constituted 31.5% of the total number of cattle owned by members, which cattle had grazed and received the services of the Association during the 1956 season, and therefore respondent should be credited with the sum of $6,331 which equals 31.5% of the grazing fee ($20,100.25) which had been so accumulated and paid for 1956. There is sufficient competent evidence to support the conclusion reached by the trial court that such credit was justified.

■ Relief will be granted in any case where the pleading and proof entitle the plaintiff to any relief whether legal or equitable and whether the particular relief be prayed for or not. I.C. § 10–704; Sims v. Purcell, 74 Idaho 109, 257 P.2d 242; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Addy v. Stewart, 69 Idaho 357, 207 P.2d 498; Stivers v. Sidney Mining Company, 69 Idaho 403, 208 P.2d 795; Swanstrom v. Bell, 67 Idaho 554, 186 P.2d 876; Schlieff v. Bistline, 52 Idaho 353, 15 P.2d 726.

■ This Court has uniformly held, in equity as well as at law, the findings and judgment of a trial court made upon conflicting evidence will not be disturbed where (as in the case at bar) there is substantial evidence to support them. Reynolds Irr. Dist. v. Sproat, 69 Idaho 315, 206 P.2d 774; Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585; McCarty v. Sauer, 64 Idaho 748, 136 P.2d 742; Maher v. Gentry, 67 Idaho 559, 186 P.2d 870; State v. Snoderly, 61 Idaho 314, 101 P.2d 9; Hagan v. Clyde, 60 Idaho 785, 97 P.2d 400.

Having found that the conclusion reached by the trial court is supported by substantial competent evidence, and finding no error the judgment is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.

On Petition for Rehearing

KNUDSON, Justice.

■ Upon consideration of appellant's petition for rehearing we have concluded that the trial court employed an erroneous method in determining the amount of credit or off-set to which respondent is entitled. Respondent's contribution to the accumulated reserve, or sinking fund, to be al-

lowed as a credit or off-set, was determined upon the basis of the percentage of the reserve which the number of cattle belonging to respondent which were grazed on association land during 1956 bore to the total number of cattle grazed during that year. Respondent's credit or off-set should have been determined on the basis of the percentage that his cattle grazed bore to the total of cattle grazed during the five years in which the reserve fund was accumulated.

The judgment is reversed and this cause is remanded with instructions to the district court to receive evidence tending to establish the amount that respondent contributed, through the payment of assessments during the years 1951 to 1955 both inclusive, to the reserve, or sinking fund, which was accumulated during said years for the purpose of enabling appellant to pay the Bureau of Indian Affairs the 1956 grazing fee in advance

Appellant shall be entitled to judgment against respondent in an amount equal to the difference between the total of respondent's contributions to said reserve, or sinking fund, and the sum of $6,728.

Petition for rehearing denied August 4, 1960.

No costs allowed.

TAYLOR, C. J., and SMITH, Mc-QUADE and McFADDEN, JJ., concur.