376 P.2d 361

Marietta JONES, Kenneth Jones, and Stanley John Jones, minor children, by and through Philip E. Dolan, court appointed guardian of the Estates of Marietta Jones, Kenneth Jones, and Stanley John Jones, minors, Plaintiffs-Appellants,

v.

STATE of Idaho, Dan DeShon and Teresa DeShon, husband and wife, W. A. Nieman and Maybelle Nieman, husband and wife, Glenn Bandelin and Dora Bandelin, husband and wife, Fred Schedler and Iris Schedler, husband and wife, Malcom P. McKinnon and Margaret McKinnon, husband and wife, Fred Kennedy and Lotta Kennedy, husband and wife, Marjorie Payne, Kenneth Carey, Vernon Carey, James W. Carey, G. F. McClelland and Irene McClelland, husband and wife, Defendants-Respondents.

No. 9053.

Supreme Court of Idaho.

Oct. 2, 1962.

Rehearing Denied Dec. 4, 1962.

Stephen Bistline, Sandpoint, for appellants.

Frank L. Benson, Atty. Gen., Andrew Harrington, Chief Legal Counsel, Dept. of Highways, Boise, for the State.

TAYLOR, Justice.

Plaintiffs (appellants) Marietta Jones, Kenneth Jones, and Stanley John Jones, are the children of Jack Jones and Veneta Jones. Philip E. Dolan is the duly appointed guardian of the estates of said children. At the times involved, all the children were minors. This action was commenced September 18, 1959, for the purpose of quieting title in the minors to two parcels of real property in Bonner county. The defendants (respondents) are the present owners, or claimants, of the property.

In January, 1947, an action for divorce was commenced by Jack Jones against Veneta Jones, in which Veneta Jones filed a cross-complaint seeking a divorce from the plaintiff. Each sought a divorce on the ground of cruelty; each asked custody of the children, and an award of the community property, consisting of the two parcels of real estate here involved. Pursuant to stipulation of the parties, the plaintiff, Jack Jones, later defaulted and his complaint was dismissed. The cause was tried on the cross-complaint of Veneta Jones and decree of divorce was entered May 19, 1947.

The interest of the parties in one of the parcels of land consisted of an equity acquired by them pursuant to a contract of purchase executed in May, 1946, upon which the Jones made a down payment of $2,000 and undertook to pay the balance by means of monthly payments of $40 each. Payments were to be made to the bank, where the contract and deed were placed in escrow. This parcel is hereinafter referred to as the Gregory tract.

The other parcel was a residence lot in Sandpoint owned by the Jones in fee, and is hereinafter referred to as the McGhee tract.

By the divorce decree both of these properties were "awarded to defendant and cross-complainant, Veneta Jones, to be held in trust for the benefit of the three minor children of said marriage, to-wit: Marietta Jones, Kenneth Edwin Jones, and Stanley John Jones." With respect to each of the properties the decree also contained the following provision:

"That in the event of an offer for purchase for said property, before a sale is made, the Court is to be advised concerning same and the Court shall determine the terms and conditions upon which said property is to be sold, and before the same shall be final shall approve the sale of said property, and

the defendant and cross-complainant, Veneta Jones, shall comply with all orders that the Court may make in reference to the sale or contract of sale of said real estate, also as to the disposition of the proceeds of said sale."

During the pendency of the divorce action the plaintiff, Jack Jones, then 58 or 59 years of age, was suffering heart ailments, for which he was hospitalized on three or four occasions. The defendant, Veneta Jones, suffered an emotional upset and hearing was had February 26, 1947, before the probate court as to her mental condition. Pursuant to the testimony of the doctors present, the court found that Veneta Jones "was not an insane person, but was emotionally unstable and it was therefore dangerous for the said children, whereupon the said Veneta Jones, mother of the said minor children, and Jack Jones, father of said children signed a temporary surrender and release for said children to be sent to the Lewiston Home Finding and Aid Society at Lewiston, Idaho." On the same day the children were committed to the Childrens Home Finding and Aid Society at Lewiston for a period of six months. In early November, 1947, the children were transferred by order of the probate court from the Lewiston home to the care of Mr. and Mrs. J. R. Boardman in Wasco, California. Their present custody and whereabouts do not appear from the record.

The divorce decree also contained a provision requiring the father to pay to the defendant $60 per month "until said children attain their majority, and that said sums of money be paid to the Clerk of this Court." Presumably these payments were intended to be for the support of the children. Under date of October 15, 1947, the district judge made and entered the following order in the divorce case:

"It appearing to the Court that some of the property described in the decree in the above entitled case is about to be sold and it further appearing to the Court that the interest of the minor children, to-wit: Marietta Jones, Kenneth Edwin Jones and Stanley John Jones, should be protected and that any monies due or to become due under any contract of sale or for the sale of any property should be deposited in trust for the use and benefit of said children; and it appearing further to the Court that Veneta Jones, at the present time, is not the proper person to act as trustee for said children, now therefore, it is,

"Ordered, that Tom Jones, brother of the defendant, in said action be and is hereby appointed trustee of all funds in trust for the use and benefit of said children and that all monies deposited with the escrow holder shall be deposited to the credit of Tom Jones,

trustee, for the use and benefit of Marietta Jones, Kenneth Edwin Jones and Stanley John Jones, and it is,

"Further Ordered, that any disbursements from said fund by said trustee shall be subject to the approval of the Court."

The residence on the Gregory tract was occupied by one Louie Adams and his family from the fall of 1946 to the fall of 1947, except for a time in the spring of 1947 when they were excluded therefrom by high water. Adams said he was paying a rental of $60 or $65 per month; that, as directed by Mrs. Jones, he made his payments at the bank where the escrow was held; and that he moved out when informed that the property had been sold. He also stated he had offered Mrs. Jones $7000 for the property, thinking he "might go a little higher, perhaps up to $8000; and that Mrs. Jones informed him the property would have to bring $9000," and "that it had become the property of her children in trust."

Under date of November 20, 1947, a contract was entered into for the sale of the Gregory tract by Gregory and wife to George Rickard and wife for the purchase price of $6250. The contract contains the following:

"It is further understood and agreed that a contract of sale of the above described real estate was entered into on May 8, 1946 between George Gregory and Genevieve Gregory, his wife, and Jack Jones and Veneta Jones, his wife, under certain terms and conditions.

"It is further understood that the District Court of the Eighth Judicial District of the State of Idaho, in and for the County of Bonner, State of Idaho, on May 19, 1947 issued to Veneta Jones an absolute decree of divorce from Jack Jones, and further ordered, adjudged and decreed that the equity in contract on above real estate was awarded to Veneta Jones, and said property to be held in trust for the minor children of said Jack Jones and Veneta Jones.

"It is further understood that the above District Court on October 15, 1947 appointed Tom Jones as Trustee of all funds of the above children.

"It is further understood that the said Veneta Jones did not pay either principal or interest or taxes on the above contract after January 1, 1947. That on October 1, 1947, the parties of the first part, George Gregory and Genevieve Gregory, his wife, declared the contract void and repossessed the property according to the terms of the contract.

"It is further agreed by George Gregory and Genevieve Gregory, his wife, to pay to Tom Jones as guardian

of the minor children of Jack and Veneta Jones the net balance left out of the proceeds of this sale after all claims and liens against the above property are paid.

"It is further understood that this sale is subject to the approval of Judge E. V. Boughton of the District Court of the Eighth Judicial District of the State of Idaho, in and for the County of Bonner.

"Approved by: /s/ E. V. Boughton,
District Judge."

The real estate agency rendered the following statement covering disbursal of the purchase price.

"Expenses—

| | |
|---|---|
| "Taxes | $ 81.53 |
| "Abstracting | 38.00 |
| "Tom Jones, note | 313.00 |
| "Bonner County National Bank | 183.15 |
| "Findlay Real Estate, Commission | 300.00 |
| "Additional abstracting and filing | 24.32 |
| "George Gregory, Bal. and interest | 4810.00 |
| "Total expenses | $5750.00 |
| "Balance left for minor children | 500.00 |
| | $6250.00" |

By warranty deed dated January 22, 1948, the Gregory tract was conveyed by Gregory and wife to Rickard and wife. On the same date, January 22, 1948, it was conveyed by Rickard and wife to Robert Niemann and wife. Other deeds and instruments of record show conveyances of various portions of the tract to other defendants.

By deed, dated October 14, 1947, the McGhee tract was conveyed by Veneta Jones, "a divorced lady," to George Spurgeon and wife for the recited consideration of $10. Jack Jones testified that prior to the sale, the McGhee property had been leased and was returning a rental of $35 per month, and after the sale the purchase price was being paid at $25 per month.

Under date of November 21, 1947, Veneta Jones executed and delivered a quitclaim deed of the Gregory tract to Gregory and wife. On February 14, 1958, Tom Jones, as trustee, executed and delivered to Dan DeShon a quitclaim deed conveying the Gregory tract.

Jack Jones further testified that he discontinued his prosecution of the divorce action, and permitted his default to be entered in the cross-action, upon reaching an agreement with his wife, Veneta, that she would not press her claim to the community property and would permit the court to decree it to her in trust for the children; that his reason for seeking the property himself was to enable him to use the property and its income for the support of the children.

The cause was submitted to the district court upon motion of the defendants for dismissal and summary judgment thereon, and upon motion of the plaintiffs for summary judgment. No findings of fact or conclusions of law were made by the trial court. In a memorandum opinion addressed to counsel the district judge recites:

"I feel it must be conceded that the provisions of 32–712 I.C. are binding on the district courts in this state as to distribution of the community property *as between the parties* where only the rights and interests of the parties are involved; however, when the custody, care, and control of minor children are involved as in this case, it is my opinion that Section 32–710 I.C. not only gives the Court the right but imposes upon it the duty to 'subject' either the community or separate property of the parents to the support and education of those children. I can see no reason nor logic for holding a district court without the power to subject the community property of parents to an active trust for the support and education of minor children if the circumstances should warrant it. The circumstances in this particular case did warrant such action on the part of the Court. We have here an instance where each and both parents had been deemed unfit for the custody of their own children. By the provisions in the decree subjecting the property to a trust for the children and providing that no sale or disposition of the res be made without court approval and sanction, it is apparent the court concluded neither of the parties were financially responsible. It is the conclusion of this Court that under such circumstances, the district court does have jurisdiction to subject the property to an active trust, the purpose of which is to afford adequate support and education of the minor children; particularly if the trust provisions included a condition that the balance of the res, after the purposes of the trust had been accomplished, was to be returned to the innocent party."

The district judge then held that the trust attempted to be created was passive and "too indefinite, and uncertain and ambiguous to constitute an enforceable active trust," and that the district court in the divorce case lacked jurisdiction to transfer title of community property to the children; that the effect of the decree was to award the property to Veneta Jones in fee, and that she had subsequently conveyed the same to defendants or their predecessors; and that the action should be dismissed.

It is the contention of plaintiffs that by virtue of the divorce decree they became the beneficial owners of the two tracts; that the balance due on the Gregory contract was, or should have been, paid by the

application of the income from the properties; and that title should be quieted in them. Defendants contend the divorce decree, in so far as it attempted to transfer community property to the children, was null and void, since such transfer was beyond the jurisdiction and power of the court.

■ Plaintiffs first urge the defendants are strangers to the divorce decree, who had no interest in the subject matter, or property involved in the divorce action, prior to the decree, and that they cannot attack the decree in this collateral proceeding. We have stated the rule applicable to collateral attack upon a judgment by strangers, upon jurisdictional grounds, in Treece v. Treece, 84 Idaho 457, 373 P.2d 750. That ruling was contrary to plaintiff's position here. However, it should be noted that at least as to the McGhee tract the defendants, who are present owners, are not strangers, but are successors in estate, and privies of the Jones, and are bound by the decree to the same extent and under the same rules applicable to the Jones. Jeffery v. Ouldhouse, 59 Idaho 50, 80 P.2d 685; Shephard v. Coeur d'Alene Lumber Co., 16 Idaho 293, 101 P. 591.

■ The authority of the district court in the disposition of community property in a divorce action is statutory. The applicable provisions are as follows:

"In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." I.C. § 32–705.

"Where a divorce is granted for an offense of the husband, including a divorce granted upon the husband's complaint, based upon separation without cohabitation for five years, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects." I.C. § 32–706.

"The court may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." I.C. § 32–707.

"In executing the four preceding sections the court must resort, first, to the community property, then to the separate property of the husband." I.C. § 32–708.

"The community property and the separate property may be subjected to the support and education of the children in such proportions as the court deems just." I.C. § 32–710.

By these statutes the court is authorized to make provision for the support and education of the children of the marriage and, in so doing, to subject the community property to that purpose, and to require security therefor and enforce the same by receiver "or by any other remedy applicable to the case." The establishment of a trust of community property was an applicable remedy and method of subjecting that property to the support and education of the children, and was within the jurisdiction and authority of the court. Feldmann v. Feldmann, 166 Kan. 699, 204 P.2d 742; Prout v. Prout, 73 Cal.App.2d 715, 167 P.2d 1; Witaschek v. Witaschek (Cal.App.) 132 P. 2d 600; Smith v. Smith, 49 Cal.App.2d 716, 122 P.2d 346; Kelly v. Kelly, 105 Kan. 72, 181 P. 561; Guggenheimer v. Guggenheimer, 99 N.H. 399, 112 A.2d 61; 27B C.J.S. Divorce § 270.

■ It is unimportant whether the trust so created was "active" or "passive" within the rules applicable to conventional trusts. The office of trustee, with which we are here concerned, was comparable to that of a receiver. I.C. §§ 32–707, 8–601, 8–605; Martin v. Atchison, 2 Idaho 624, 33 P. 47; 75 C.J.S. Receivers § 3. He was an officer of the court appointed for the purpose of preserving the property and the income and proceeds thereof in order to make it available for the support and education of the children. As such officer the trustee was subject to the continuing direction and further orders of the court. The appointment of such an officer and the subjection of the community property to his control, under the direction of the court, was justified by the facts in the Jones case. Both parents were found unfit for the custody of the children, and financially irresponsible. Although the decree required the husband to pay $60 per month for the support of the children, there was little prospect that such payments would be made without subjecting the community property thereto. Moreover, it was within the power of the court to subject the property to further or additional allowances for the support and education of the children in the future, as their needs might require. I.C. § 32–705.

■ The order appointing the trustee, being within the jurisdiction and authority of the court in the divorce action, is not subject to collateral attack in this proceeding. Weil v. Defenbach, 36 Idaho 37, 208 P. 1025; 49 C.J.S. Judgments § 421; Anno. 12 A.L.R.2d 717; Feldmann v. Feldmann, 166 Kan. 699, 204 P.2d 742. In a case involving an attack upon the authority of a receiver appointed in a divorce action, the Supreme Court of California said:

" * * * the 'existence or validity of the right asserted' by the petitioner rests upon his judicial appointment as receiver in the Baldwin divorce action, an order valid on its face and not subject to collateral attack in the probate proceeding. Such order, made upon a proper showing and duly confirmed, and which Baldwin has allowed to stand unchallenged for more than three years, is entitled to the same conclusiveness as any other judicial act of an authorized court. The petitioner's status has heretofore been resolved by appropriate judicial rulings 'in an independent proceeding'—the divorce action—". Lissner v. Superior Court of Los Angeles County, 23 Cal.2d 711, 146 P.2d 232, at 236.

Here, plaintiffs contend that the effect of the divorce decree was to transfer the title to the community property to them. If such were the object and purpose of the decree, then we would agree with the defendants that the action of the court was beyond its power in the premises and as such is a nullity and subject to collateral attack. I.C. §§ 32–707, 32–708, 32–710, 32–712; Emery v. Emery, 104 Kan. 679, 180 P. 451; 49 C.J.S. Judgments § 401.

However, as we construe the decree, it was not the intent or purpose of the court to transfer the property to the children. The language of the decree is not explicit. It is subject to the construction that it was the purpose and intention of the court to subject the property to the obligation of the parents for the support and education of the children. In Evans v. City of American Falls, 52 Idaho 7, 11 P.2d 363, this court said:

" * * * In construing and interpreting this judgment, it is at once apparent that effect cannot be given both to the joint judgment and the several judgments. It is our duty to so construe the judgment as to give it effect and validity, and in order to do so, we must make that interpretation of it which will harmonize with the facts and the law of the case and be such as ought to have been rendered. * * *

"Since the judgment is bottomed upon the obligations assumed by the bondsmen, and since such obligations are several and not joint, it is obvious that the court could not have entered a valid joint judgment against them. It could and did enter several judgments against each of them. It is consonant with reason and these accepted rules of construction to construe the judgment as a several judgment only against the five bondsmen, and to disregard as surplusage that part which imposes a joint liability upon them." 53 Idaho at 20, 21, 11 P.2d at 368.

" * * * Where a judgment is susceptible of two interpretations, that one

will be adopted which renders it the more reasonable, effective, and conclusive and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered. If possible, that construction will be adopted which will support the judgment, rather than one which will destroy it. All presumptions are in support of the judgment; nothing will be presumed against it.

"A judgment must be construed in light of the situation of the court, what was before it, and the accompanying circumstances." 49 C.J.S., Judgments, § 436, pp. 865, 866, 867

"* * * If a court order or judgment admits of two constructions, that one will be adopted which is consistent with the judgment required by the facts and the law of the case." Graham v. Graham, 174 Cal.App.2d 678, 345 P.2d 316, at 321.

We, therefore, hold that the trusteeship created by the judgment in the divorce action was for the purpose of subjecting the property to the support and education of the children. So construed, the decree is valid and binding upon the parties and their privies.

█ So far as the record here shows, the trustee has not been required to make an accounting and his trusteeship has not been terminated. The purported conveyances made by the first trustee, Mrs. Jones, and the second trustee, Tom Jones, appear to have been unauthorized. There may be involved the question as to whether some one or more of the subsequent owners or claimants of the lands involved may be bona fide purchasers without notice. Thus, there are unresolved questions of fact, and the granting of the motion for summary judgment was erroneous. I.R.C.P. 56(c); Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965; Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

Two of the children are still minors, presumably entitled to continuing support and education, and third parties may be entitled to reimbursement for support furnished.

█ The pleadings and evidence adduced, in support of the motions, indicate that the plaintiffs are, or may be, entitled to some relief. The fact that they prayed for relief beyond that which the law permits, does not justify a denial of that to which they may be able to establish a right. The district court is authorized to grant any relief consistent with the pleadings and evidence. Fort Hall Indian Stockmen's Assn., Inc. v. Thorpe, 82 Idaho 458, 354 P.2d 516; Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057; Sims v. Purcell, 74 Idaho 109, 257 P.2d 242; Haener v. Albro, 73 Idaho 250,

249 P.2d 919; Coleman v. Jaggers, 12 Idaho 125 85 P. 894; I.R.C.P. 8(a).

" 'Equity having obtained jurisdiction of subject matter of a dispute, will retain it for the settlement of all controversy between the parties with respect thereto.' Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080, 1083, and cases there cited. It is also the rule in this state (except in default cases) that the court will grant all proper relief consistent with the case made and embraced within the issues, whether the particular relief be prayed for or not. (Cases cited)." Anderson v. Whipple, 71 Idaho 112, 122, 227 P.2d 351, 357.

The judgment is reversed and the cause is remanded with directions to reinstate the complaint, and to permit the parties to join the parents, the receivers, and such other parties as may be necessary to a full, complete and final determination of the issues involved.

Costs to appellants, except the cost of their reply brief, filed late.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.

## ON PETITION FOR REHEARING

TAYLOR, Justice.

. In their petition for rehearing and supporting brief, defendants again urge that the terms of the Jones divorce decree were insufficient to create a valid trust; that the language of the decree was too uncertain and indefinite to create an "active" trust; and that "the terms, subject, persons and objects of the trust" not being set out, no trust was created. The court's attention is again called to decisions in California, Kansas, Oklahoma and elsewhere, holding words equivalent to those employed in the Jones divorce decree, namely, "to be held in trust for the benefit of the three minor children of said marriage, [naming them]" insufficient to create a trust.

It is unnecessary to review the decisions cited. The decrees involved in those cases apparently did not subject the trustee to the continuing supervision of the divorce court. In the Jones case the court specifically provided that any disposition of the subject of the trust or the proceeds thereof, was to be done pursuant to future orders of the court; the trustees' actions were to be directed and approved by the court. There was no occasion to spell out the terms, conditions and objects of the trust in the decree. These were to be supplied by orders made subsequent to the decree as the need arose.

"Decrees and orders affecting the custody and support of children are subject to the continuing control of the court and do not become final. Sauvageau v. Sauvageau, 59 Idaho 190, 81

P.2d 731; Arkoosh v. Arkoosh, 66 Idaho 607, 164 P.2d 590; Smith v. Smith, 67 Idaho 349, 180 P.2d 853; Rosgen v. Rosgen, 68 Idaho 521, 200 P.2d 1005; Hendricks v. Hendricks, 69 Idaho 341, 206 P.2d 523, 9 A.L.R.2d 617." Application of Martin, 76 Idaho 179, at 183, 279 P.2d 873, at 875, 53 A.L.R.2d 582. I.C. § 32–705.

■ Defendants also object to reference in the opinion to the Gregory tract as community property, calling attention to an assignment of the contract, under which the Jones were purchasing that property, by Jack Jones to his wife, Veneta Jones. Assuming that the vendee's interest in the Gregory tract was the separate property of Veneta Jones, the result is the same. The two parcels of property mentioned comprised all of the property owned by the Jones. There was no other property to which the court could resort to provide support and education for the children. Where necessary to that purpose the court may resort to the separate property of the husband, I.C. § 32–708, and of the wife, I.C. §§ 32–710, 32–1002, 32–1003; State v. Beslin, 19 Idaho 185, 112 P. 1053; Larson v. Independent School District, 53 Idaho 49, at 61, 22 P.2d 299.

■ Defendants also object to what they regard as a transfer or application of the power given to the divorce court by one section of the statute, to a power or purpose set out in another section. They contend that the power granted by each section is limited to cases in which the particular section is applicable and cannot be applied in any other case. (The sections referred to are quoted in the foregoing opinion). We think these sections are to be construed as in pari materia, and that the statutory, and indeed, the inherent, power of the courts as expressed in I.C. § 1–1622 (cited and relied upon by defendants in another connection) is applicable here, to wit:

"When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." I.C. § 1–1622.

Defendants also complain of this court's failure to note and give effect to other documents appearing in the record. We have purposely avoided determining the legal effect of some of the documents and proceedings leading up to this action for the reason that this case is before us on an appeal from a summary judgment. The validity and legal effect of all documents

and proceedings not necessarily involved in this decision on appeal are left for the determination of the trial court.

The petition for rehearing is denied.

SMITH, C. J., and KNUDSON, Mc-QUADE and McFADDEN, JJ., concur.